173 Cal.App.4th 1229 (2009)
___ Cal.Rptr.3d ___
KIMBERLY LOEFFLER et al., Plaintiffs and Appellants,
v.
TARGET CORPORATION, Defendant and Respondent.
No. B199287.
Court of Appeals of California, Second District, Division Three.
May 12, 2009.
*1233 Lange & Koncius, Joseph J. M. Lange and Jeffrey A. Koncius for Plaintiffs and Appellants.
The Kick Law Firm, Taras Kick and G. James Strenio for Michael McClain, Avi Feigenblatt and Gregory Fisher as Amici Curiae on behalf of Plaintiffs and Appellants.
Morrison & Foerster, Miriam A. Vogel, David F. McDowell and Samantha P. Goodman for Defendant and Respondent.
Alston & Bird, Andrew E. Paris, Ethan D. Millar and Joann M. Wakana for The Directv Group, Inc., as Amicus Curiae on behalf of Defendant and Respondent.
Edmund G. Brown, Jr., Attorney General, David S. Chaney and Matt Rodriquez, Chief Assistant Attorneys General, and Al Shelden, Assistant Deputy Attorney General, as Amicus Curiae.
*1234 Kristine Cazadd, Robert W. Lambert and John L. Waid for California State Board of Equalization as Amicus Curiae.

OPINION
KITCHING, J. 

INTRODUCTION
In California, retailers are obligated to pay sales taxes to the state on their gross receipts, subject to certain exemptions. Retailers may, however, seek sales tax reimbursement from their customers. In this case, plaintiffs and appellants Kimberly Loeffler and Azucena Lemus contend that defendant and respondent Target Corporation (Target) was not entitled to collect sales tax reimbursement on purchases of hot coffee "to go" because sales tax was allegedly not due on such purchases.
Plaintiffs seek a refund of sales tax reimbursement from Target on their own behalf and on behalf of the class they purport to represent. They also seek an injunction prohibiting Target from collecting sales tax reimbursement on purchases of hot coffee "to go." The trial court sustained without leave to amend Target's demurrers to plaintiffs' pleadings and entered judgment in favor of Target on the ground, among others, that article XIII, section 32 of the California Constitution (article XIII, section 32) bars plaintiffs' action. We affirm.
(1) Article XIII, section 32 prohibits injunctions against the collection of state taxes and provides that refunds of taxes may only be recovered in a manner provided by the Legislature. As our Supreme Court explained in Woosley v. State of California (1992) 3 Cal.4th 758, 792 [13 Cal.Rptr.2d 30, 838 P.2d 758] (Woosley), under article XIII, section 32, the courts cannot expand the methods for seeking tax refunds expressly provided by the Legislature. The purpose of this constitutional provision is to ensure that governmental entities may engage in fiscal planning so that essential public services are not unnecessarily interrupted.
(2) The Legislature has enacted a statutory scheme for sales tax and associated sales tax reimbursement refunds. The only way to litigate a sales tax refund dispute under this scheme is for the retailer, as the taxpayer, to pay the tax, exhaust its administrative remedies by filing a claim for a refund with the State Board of Equalization (Board), and if the claim is denied or not acted upon, to file a suit for a sales tax refund. Because they are not the taxpayers, plaintiffs cannot file a claim for a sales tax refund and thus cannot *1235 file a suit for a sales tax refund. In other words, plaintiffs do not have standing to commence a sales tax refund suit.
(3) Customers like plaintiffs, however, may obtain a refund of excess sales tax reimbursement collected by a retailer. Under Revenue and Taxation Code section 6901.5[1] and a related regulation (Cal. Code Regs., tit. 18, § 1700), retailers must refund excess sales tax reimbursement if (1) the Board ascertains, in response to a claim filed by a retailer (§ 6904) or as a result of an audit (§ 7054) or other review (e.g., § 6481) by the Board, that excess sales tax reimbursement was collected, or (2) the retailer prevails in a suit against the Board for a refund of overpaid sales taxes (§ 6933). Neither of these circumstances exists here. Plaintiffs therefore are not entitled to a refund of alleged excess sales tax reimbursement collected by Target under the statutory scheme enacted by the Legislature.
(4) Plaintiffs contend that they have a private right of action against Target for a refund of sales tax reimbursement pursuant to section 6901.5, without giving the Board an opportunity to resolve the sales tax issue presented here. We reject this argument. Section 6901.5 provides for a refund of sales tax reimbursement after the Board ascertains that such a refund is due. In this case, the Board has not ascertained whether or not sales tax was due on purchases of hot coffee "to go" at Target, nor has it determined that a sales tax reimbursement refund is due. Section 6901.5 therefore does not support plaintiffs' claims against Target.
The complaint also alleges causes of action under unfair business practices and consumer protection statutes and a cause of action for money had and received. Plaintiffs seek damages, restitution and injunctive relief pursuant to these causes of action. However, plaintiffs are attempting to resolve a sales tax dispute by using consumer and common law remedies rather than the procedure set forth by the Legislature. This they cannot do under article XIII, section 32.
Plaintiffs argue that they are not violating article XIII, section 32, because they do not seek to enjoin the state from collecting sales taxes. Rather, plaintiffs contend, they seek to enjoin a private company from collecting sales tax reimbursement. Plaintiffs further contend that article XIII, section 32 is not implicated because they only seek a refund of sales tax reimbursement, not a refund of sales taxes.
(5) We reject plaintiffs' argument and find that a court may not directly or indirectly enjoin or prevent the collection of a sales tax. As we will *1236 explain, the statutory schemes for sales taxes and sales tax reimbursement are intertwined. A determination by a court that sales tax is not due on "to go" hot coffee purchases from Target, and an injunction against the collection of sales tax reimbursement by Target on such purchases, is effectively an injunction against the collection of sales tax by the state. Further, under article XIII, section 32, plaintiffs cannot circumvent the statutory scheme for sales tax reimbursement refunds by asserting causes of action not contemplated by that scheme. We therefore affirm the judgment and hold that plaintiffs' action is barred by article XIII, section 32 and the sales tax statutes in the Revenue and Taxation Code.

PROCEDURAL AND FACTUAL BACKGROUND

1. Procedural History

Plaintiffs commenced this action in October 2006, and in November 2006 filed a first amended complaint (FAC) for six causes of action. In February 2007, the trial court sustained Target's demurrer to plaintiffs' fourth cause of action for money had and received without leave to amend. In addition, the court granted plaintiffs' request to add the Board as a new defendant.
In March 2007, plaintiffs filed a second amended complaint (SAC) for (1) violation of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.), (2) violation of the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.), and (3) violation of section 6359[2] and California Code of Regulations, title 18, section 1603 (regulation 1603).[3] The SAC did not name the Board as a defendant.
In April 2007, the court sustained Target's demurrer to all causes of action of the SAC without leave to amend, and entered judgment in favor of Target. Plaintiffs filed a timely notice of appeal.

*1237 2. Allegations in Plaintiffs' Pleadings

Plaintiffs bring this action on behalf of themselves and "all persons who are California residents who paid sales tax" to Target "for the purchase of hot coffee drinks `to go' or for `take-out'" (the class). In their FAC and SAC, plaintiffs made the following allegations.[4]
Target "charged and collected sales tax" on purchases of "to go" and "take-out" hot coffee. These charges were prohibited by California law, specifically section 6359 and regulation 1603. As a result, plaintiffs suffered monetary loss. For example, in May 2006, plaintiff Azucena Lemus purchased hot coffee "to go" from a Target store located in Manhattan Beach, California. On that occasion, Target unlawfully charged Ms. Lemus "$0.71 in sales taxes."

A. Allegations Regarding Money Had and Received

Target "exacted" money from plaintiffs it "had no legal right" to receive. The money was "intended to be used for the benefit" of plaintiffs but was not used for plaintiffs' benefit. Further, Target has not given the money back to plaintiffs, thereby causing plaintiffs damage.

B. Allegations Regarding Unfair Competition Law

Target is engaged in "unfair" and "unlawful" business acts or practices. By imposing sales tax on the purchase of hot coffee "to go" or for "take-out," Target "unfairly and unlawfully increased the costs to Class members in direct contradiction to law." Plaintiffs seek to enjoin Target from "improperly charging sales taxes to consumers who purchase hot coffee drinks `to go' and for `take-out'," and "restitution of any monies wrongfully acquired or retained" by Target as a result of its "ill-gotten gains" obtained by "unfair practices."

C. Allegations Regarding Consumers Legal Remedies Act

The coffee purchased by plaintiffs and class members constituted goods purchased primarily for personal, family or household purposes. Target violated Civil Code section 1770, subdivision (a)(2), (3) and (14) by misrepresenting that it had the legal right to charge consumers "sales taxes" on coffee purchased "to go" or for "take-out." It also violated Civil Code section *1238 1770, subdivision (a)(19) when it inserted "an unconscionable provision into contracts" by improperly charging sales tax on certain coffee purchases.
Plaintiffs notified Target of its violations of the CLRA and demanded that Target remedy its violations. Target failed to do so within 30 days. As a result of Target's violations of the CLRA, plaintiffs and class members have suffered damages in "the amount of sales taxes wrongfully collected" by Target from plaintiffs and other class members for the purchase of hot coffee "to go" or for "take-out."

D. Allegations Regarding Revenue and Taxation Code Section 6359 and Regulation 1603

Target violated section 6359 and regulation 1603 "by charging the general public sales taxes for the sale of hot coffee drinks `to go' or for `take-out'. . . ." Section 6901.5 "provides a private right of action for consumers to bring suit against retailers such as Target to recover illegally imposed sales taxes. . . ."
Plaintiffs pray for, inter alia, restitution and damages in unspecified amounts, an injunction prohibiting Target from continuing its violations of the UCL and CLRA, and an award of attorney's fees and costs.

CONTENTIONS
Plaintiffs contend that the trial court erroneously sustained Target's demurrer to their cause of action for money had and received in their FAC and their three causes of action in their SAC. They contend that they can pursue a cause of action against Target under section 6901.5, and that article XIII, section 32 does not bar their UCL, CLRA, and money had and received causes of action.

DISCUSSION

1. Standard of Review

"A demurrer tests the legal sufficiency of factual allegations in a complaint." (Rakestraw, supra, 81 Cal.App.4th at p. 42.) "On appeal, a plaintiff bears the burden of demonstrating that the trial court erroneously sustained the demurrer as a matter of law. This court thus reviews the complaint de novo to determine whether it alleges facts stating a cause of action under any legal theory." (Id. at p. 43.)

*1239 2. Overview of the California Sales Tax

A. The Retailer's Obligation to Pay Sales Tax and Ability to Obtain Reimbursement from Its Customers

(6) The California sales tax is an excise tax imposed on retailers for the privilege of selling tangible personal property in this state. (§ 6051; City of Pomona v. State Bd. of Equalization (1959) 53 Cal.2d 305, 309 [1 Cal.Rptr. 489, 347 P.2d 904].) It is presumed that all of a retailer's gross receipts are subject to the sales tax unless the retailer establishes that purchases fall under one of many specified exemptions. (§ 6091, 6351 et seq.) Retailers are required to file quarterly sales tax returns and make quarterly payments to the state. (§§ 6451-6459.) If a retailer wrongfully evades sales taxes, it is subject to civil and criminal penalties. (§§ 7152-7155.)
(7) Although retailers commonly refer to "sales tax" on their invoices to customers, it is important to keep in mind that "[t]he sales tax is imposed on the seller, not upon the buyer." (Gen. Elec. Co. v. State Bd. of Equalization (1952) 111 Cal.App.2d 180, 185 [244 P.2d 427].)[5] In other words, "[t]he tax relationship is between the retailer only and the state; and is a direct obligation of the former." (Livingston Rock & Gravel Co. v. De Salvo (1955) 136 Cal.App.2d 156, 160 [288 P.2d 317] (Livingston).)
(8) A retailer, however, may seek sales tax reimbursement from a purchaser. "Whether a retailer may add sales tax reimbursement to the sales price of the tangible personal property sold at retail to a purchaser depends solely upon the terms of the agreement of sale." (Civ. Code, § 1656.1, subd. (a).) Under certain circumstances, it is presumed that the purchaser agreed to pay the retailer sales tax reimbursement. For example, if sales tax reimbursement is shown on the sales check or other proof of sale, it is presumed that the contract between the retailer and the purchaser provides that the purchaser will reimburse the retailer for the sales tax the retailer must pay the state. (Id., § 1656.1, subd. (a)(2).)

B. The Board Is Charged with Administrating and Enforcing the Sales Tax Statutes

(9) The Board is charged with administrating and enforcing the sales tax statutes. (See §§ 7051-7060.) Among other duties, the Board enacts sales tax *1240 regulations (§ 7051), reviews sales tax returns and reports by retailers and others (§§ 6481, 7055), and conducts audits of retailers (§ 7054).

C. The Legislature Has Created a Comprehensive System for Sales Tax and Sales Tax Reimbursement Refunds

(10) The Legislature has created a comprehensive system for seeking sales tax refunds and associated sales tax reimbursement refunds. Sections 6901 to 6908 set forth the provisions for filing a claim with the Board. Sections 6931 to 6937 set forth the provisions for filing a lawsuit for sales tax refunds.
(11) Under this statutory scheme, a retailer, as the taxpayer, can file a sales tax refund claim with the Board. (See §§ 6901-6908, 6932.) There are certain statutory requirements for and limitations on claims with the Board. For instance, a claim filed for or on behalf of a class of taxpayers must, inter alia, be "accompanied by written authorization from each taxpayer sought to be included in the class." (§ 6904, subd. (b)(1).)
The Board has promulgated regulations governing claims for tax refunds with the Board, including claims for refunds of erroneously collected sales tax. (See Cal. Code Regs., tit. 18, § 5230 et seq.) These regulations specify the means by which retailers, as taxpayers, may file a claim with the Board for overpaid sales taxes.
(12) The Legislature has provided that filing a claim with the Board is a prerequisite to maintaining a suit for a refund of sales taxes. (A&M Records, Inc. v. State Bd. of Equalization (1988) 204 Cal.App.3d 358, 367 [250 Cal.Rptr. 915] (A&M Records), disapproved on another ground in Preston v. State Bd. of Equalization (2001) 25 Cal.4th 197, 221, fn. 7 [105 Cal.Rptr.2d 407, 19 P.3d 1148] (Preston).) Section 6932 states: "No suit or proceeding shall be maintained in any court for the recovery of any amount alleged to have been erroneously or illegally determined or collected unless a claim for refund or credit has been duly filed pursuant to Article 1 (commencing with Section 6901)."
The purpose of requiring a taxpayer to file a claim with the Board before commencing a tax refund lawsuit is to give the Board an opportunity to correct any mistakes. (Preston, supra, 25 Cal.4th at p. 206.) This, in turn, helps the parties and the courts avoid unnecessary litigation (ibid.) and "delineates and restricts the issues to be considered in a taxpayer's refund action" (Atari, Inc. v. State Bd. of Equalization (1985) 170 Cal.App.3d 665, 672 [216 Cal.Rptr. 267]; see also A&M Records, supra, 204 Cal.App.3d at p. 367 [a refund suit is "confined to the grounds set forth" in the claim with the Board]).
*1241 (13) As part of its comprehensive scheme, the Legislature has provided a means for customers such as plaintiffs to obtain a refund of collected sales tax reimbursement. Section 6901.5 provides that a retailer who has collected excess sales tax reimbursement from a customer must return the money to the customer who paid it or remit the funds to the state. Specifically, section 6901.5 states: "When an amount represented by a person [retailer] to a customer as constituting reimbursement for taxes due under this part is computed upon an amount that is not taxable or is in excess of the taxable amount and is actually paid by the customer to the person [retailer], the amount so paid shall be returned by the person [retailer] to the customer upon notification by the Board of Equalization or by the customer that such excess has been ascertained. In the event of his or her failure or refusal to do so, the amount so paid, if knowingly or mistakenly computed by the person [retailer] upon an amount that is not taxable or is in excess of the taxable amount, shall be remitted by that person [retailer] to this state."
(14) The Board has promulgated California Code of Regulations, title 18, section 1700 (regulation 1700) relating to the administration and enforcement of section 6901.5. Under regulation 1700, a customer has paid "excess tax reimbursement" when, inter alia, "an amount represented by a person [retailer] to a customer as constituting reimbursement for sales tax is computed upon an amount that is not taxable . . . ." (Reg. 1700, subd. (b)(1).) That is precisely the situation plaintiffs claim exists here.
Regulation 1700 further provides, inter alia: "Whenever the board ascertains that a person [retailer] has collected excess tax reimbursement, the person [retailer] will be afforded an opportunity to refund the excess collections to the customers from whom they were collected. In the event of failure or refusal of the person [retailer] to make such refunds, the board will make a determination against the person [retailer] for the amount of the excess tax reimbursement collected and not previously paid to the state, plus applicable interest and penalty." (Reg. 1700, subd. (b)(2).)

3. Article XIII, Section 32 and Its Underlying Policies

Article XIII, section 32 states: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."
(15) The first sentence of article XIII, section 32 bars injunctions against the collection of state taxes. The second sentence of article XIII, section 32 precludes, inter alia, courts "from expanding the methods for seeking tax *1242 refunds expressly provided by the Legislature." (Woosley, supra, 3 Cal.4th at p. 792.) The two provisions together "establish that the sole legal avenue for resolving tax disputes is a postpayment refund action." (State Bd. of Equalization v. Superior Court (1985) 39 Cal.3d 633, 638 [217 Cal.Rptr. 238, 703 P.2d 1131].)
The underlying policy behind article XIII, section 32 is that "strict legislative control over the manner in which tax refunds may be sought is necessary so that government entities may engage in fiscal planning based on expected tax revenues." (Woosley, supra, 3 Cal.4th at p. 789.) The state needs to engage in such planning and revenue collection even during litigation "so that essential public services dependent on the funds are not unnecessarily interrupted. [Citation.] `Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public.'" (Pacific Gas & Electric Co. v. State Bd. of Equalization (1980) 27 Cal.3d 277, 283 [165 Cal.Rptr. 122, 611 P.2d 463] (Pacific Gas & Electric).)
"`"The prompt payment of taxes is always important to the public welfare. It may be vital to the existence of a government. The idea that every taxpayer is entitled to the delays of litigation is unreason." [Citation.]'" (State Bd. of Equalization v. Superior Court, supra, 39 Cal.3d at p. 639.)

4. Plaintiffs Cannot Seek a Refund of Sales Taxes or Associated Sales Tax Reimbursement Under the Sales Tax Statutes

A. Plaintiffs Have No Standing to Seek a Sales Tax Refund

There is no statutory or regulatory provision allowing purchasers like plaintiffs to file a claim for a sales tax refund with the Board. Since only taxpayers may file a claim for refund and plaintiffs are not taxpayers, they have no standing to assert a claim with the Board. (See §§ 6901, 6902.) Consequently, plaintiffs cannot maintain a suit for a sales tax refund because the filing of a claim with the Board is a prerequisite to such a suit. (See § 6932; State Bd. of Equalization v. Superior Court (1980) 111 Cal.App.3d 568, 570 [169 Cal.Rptr. 3] [purchaser could not maintain action against Board for overpayment of sales tax]; Decorative Carpets, Inc. v. State Board of Equalization (1962) 58 Cal.2d 252, 255 [23 Cal.Rptr. 589, 373 P.2d 637] (Decorative Carpets) ["the orderly administration of the tax laws requires adherence to the statutory procedures and precludes imposing on defendant [Board] the burden of making refunds to the taxpayer's [retailer's] customers"]; see also De Aryan v. Akers (1939) 12 Cal.2d 781, 785 [87 P.2d 695] [purchaser had no standing to sue retailer].)

*1243 B. The Legislature Has Not Provided a Private Cause of Action for Customers to Seek a Refund of Sales Tax Reimbursement

(16) Plaintiffs claim that section 6901.5 provides that a customer has a private cause of action against a retailer to recover unlawfully collected sales tax reimbursement. A statute, however, "creates a private right of action only if the enacting body so intended." (Farmers Ins. Exchange v. Superior Court (2006) 137 Cal.App.4th 842, 849 [40 Cal.Rptr.3d 653].) (17) The Courts of Appeal "have held that a statute creates a private right of action only if the statutory language or legislative history affirmatively indicates such an intent. [Citations.] That intent need not necessarily be expressed explicitly, but if not it must be strongly implied. [Citations.] Particularly when regulatory statutes provide a comprehensive scheme for enforcement by an administrative agency, the courts ordinarily conclude that the Legislature intended the administrative remedy to be exclusive unless the statutory language or legislative history clearly indicates an intent to create a private right of action." (Id. at p. 850.)
(18) Applying these principles to this case, we reject plaintiffs' position. Nothing in the language[6] of section 6901.5 or related statutes and regulations affirmatively indicates the intent of the Legislature to authorize a private action by a customer against a retailer. Indeed, section 6901.5 has nothing to do with a sales tax refund lawsuit. Rather, the statute relates to a claim with the Board. This is clear because section 6901.5 is located in article 1 of chapter 7 of part 1 of division 2 of the Revenue and Taxation Code, which deals with claims with the Board, and not in article 2 of the same chapter, which deals with sales tax refund lawsuits. If the Legislature had intended section 6901.5 to create a private right of action against retailers, without the need to file a claim with the Board, as plaintiffs contend, it would have placed the statute in article 2.
By its terms, moreover, section 6901.5 requires a retailer to refund sales tax reimbursements to customers only after an overpayment of sales tax reimbursement has been "ascertained." Plaintiffs argue that a customer can "ascertain" that excess sales tax reimbursement should be refunded. Under the plain language of regulation 1700, however, the Board ascertains the overpayment of sales tax reimbursement. (See Reg. 1700, subd. (b)(2)[7]; see also §§ 6901, 6902.)
*1244 In addition, as we have explained, the Legislature has vested the Board with the authority to enforce the sales tax statutes. (Associated Beverage Co. v. Board of Equalization (1990) 224 Cal.App.3d 192, 201 [273 Cal.Rptr. 639].) Thus it would undermine the legislative scheme to interpret section 6901.5 to permit the customer to unilaterally "ascertain" when excess sales tax reimbursement has been collected by a retailer. This interpretation would disrupt the administration of the sales tax laws because it would allow customers to usurp the authority of the Board to determine the application of the law in the first instance.
(19) Section 6901.5 thus does not, as plaintiffs contend, authorize customers to file suits against retailers without a determination by the Board of whether excess sales tax reimbursement must be refunded. Instead, the statute sets forth how a retailer must distribute excess sales tax reimbursements after the Board has determined that a refund is due. Here, plaintiffs have not alleged that the Board has made such a determination. Plaintiffs therefore do not have a right to a sales tax reimbursement refund under section 6901.5.
Plaintiffs argue that Javor v. State Board of Equalization (1974) 12 Cal.3d 790, 797 [117 Cal.Rptr. 305, 527 P.2d 1153] (Javor) supports their purported section 6901.5 cause of action. In Javor, the plaintiff brought a class action on behalf of purchasers of certain motor vehicles to recover the overpayment of sales tax. The Board admitted that it owed retailers sales tax refunds. Under the predecessor statute to section 6901.5, however, retailers had no incentive to file refund claims because any refunds they obtained had to be passed on to customers like the plaintiff. (Javor, at pp. 801-802.) The Supreme Court held that under the "unique circumstances" of that case, it needed to "fashion an appropriate remedy to effect the customers' right to their refund . . . ." (Id. at pp. 802, 800.) The court thus held that the plaintiff could join the Board as a party in order to require the defendant retailers to make refund applications to the Board. (Id. at p. 802.) The court also held that the Board was required to pay refunds owed retailers into court for the benefit of class members. (Ibid.)
Plaintiffs' reliance on Javor is misplaced because this case does not have the "unique circumstances" of the Javor case. In Javor, the customers' right to a refund was undisputed. In addition, the customers were not entitled to seek refunds directly from retailers and were not allowed to pursue their suit without retailers first filing claims with the Board. In this case, by contrast, the Board has not had an opportunity to assess whether sales tax was due on purchases of hot coffee "to go" at Target, and Target has not conceded the issue. Thus the right of plaintiffs to a refund of sales tax reimbursement is not undisputed. Plaintiffs, moreover, seek the refund from Target itself without any involvement of the Board. This case is thus distinguishable from Javor.
*1245 Plaintiffs' reliance on Decorative Carpets is equally misplaced. There, a retailer sought a sales tax refund from the Board even though it conceded it had no intention of paying over the recovered refund to its customers. The Court of Appeal directed the trial court to enter judgment for the retailer "only if it submits proof satisfactory to the court that the refund will be returned to plaintiff's [retailer's] customers from whom the excess payments were erroneously collected." (Decorative Carpets, supra, 58 Cal.2d at p. 256.) Here, by contrast, there is no allegation that Target submitted a claim to the Board, much less filed a lawsuit against the Board. Decorative Carpets thus lends no support to plaintiffs' suit.
Plaintiffs also mistakenly rely on Livingston. In Livingston, it was undisputed that a retailer owed the state sales tax on the sale of certain equipment. The issue was whether the customer owed the retailer sales tax reimbursement under the contract between the parties. (See Livingston, supra, 136 Cal.App.2d at p. 159.) The court held that under that contract, the retailer was not entitled to collect sales tax reimbursement from the customer. (Id. at p. 163.) Here, by contrast, plaintiffs have not alleged that they and Target entered into a similar contract. Livingston therefore does not support plaintiffs' claims.

5. Plaintiffs Cannot Circumvent Article XIII, Section 32 and the Sales Tax Statutes by Seeking an Injunction, Damages, and Restitution Pursuant to Their UCL, CLRA and Money Had and Received Causes of Action

(20) Article XIII, section 32 prohibits injunctions against the collection of any state taxes. In addition, section 6931 specifically precludes an injunction against the state or any officer thereof to prevent the collection of sales and use taxes.[8] As we will explain, Article XIII, section 32 and Revenue and Taxation Code section 6931 preclude plaintiffs from obtaining the injunction they seek here.
Plaintiffs contend that they may obtain an injunction against Target pursuant to the UCL and CLRA[9] irrespective of article XIII, section 32 and Revenue and Taxation Code section 6931, because they do not seek to enjoin the collection of sales taxes, but rather seek to enjoin the collection of sales tax reimbursement. They further contend that article XIII, section 32 and the *1246 sales tax statutes do not bar their UCL, CLRA and money had and received claims for restitution and damages because they do not seek a sales tax refund from the state, but rather seek a refund of sales tax reimbursement from a private company.
Our Supreme Court, however, has "construed broadly" article XIII, section 32, in light of the paramount policies underlying that constitutional provision. (State Bd. of Equalization v. Superior Court, supra, 39 Cal.3d at p. 639; see also Western Oil & Gas Assn. v. State Bd. of Equalization (1987) 44 Cal.3d 208, 213 [242 Cal.Rptr. 334, 745 P.2d 1360] (Western Oil & Gas) ["Section 32 broadly limits in the first instance the power of the courts to intervene in tax collection matters; it does not merely make unavailable a particular remedy or preclude actions challenging the ultimate validity of a tax assessment."].) Because the collection of sales tax by the state from a retailer and the collection of sales tax reimbursement by a retailer from a customer are intertwined (see § 6901.5; Civ. Code, § 1656.1; Reg. 1700), an injunction against the collection of sales tax reimbursement or a refund of sales tax reimbursement may affect the state's sales tax revenues. We therefore will review not only the direct relief plaintiffs seek, but also the indirect effect of that relief on the collection of taxes by the state. (See State Bd. of Equalization v. Superior Court, supra, 39 Cal.3d at p. 640, quoting Modern Barber Col. v. Cal. Emp. Stab. Com. (1948) 31 Cal.2d 720, 723 [192 P.2d 916] ["`Since the net result of the relief prayed for . . . would be to restrain the collection of the tax allegedly due, the action must be treated as one having that purpose.'"].)
In Pacific Gas & Electric, our Supreme Court took a similar approach. There, the plaintiffs filed an action for mandamus and declaratory relief to compel the Board to adjust the assessment of their property taxes. The court, however, held that article XIII, section 32 barred the action. In reaching its decision, the court rejected the plaintiffs' attempt to "circumvent" article XIII, section 32's "restraints on prepayment tax litigation by seeking only declaratory relief." (Pacific Gas & Electric, supra, 27 Cal.3d at p. 280; see also California Logistics, Inc. v. State of California (2008) 161 Cal.App.4th 242, 248 [73 Cal.Rptr.3d 825] (California Logistics) ["The relevant issue is whether granting the relief sought would have the effect of impeding the collection of a tax."].)
In Western Oil & Gas, our Supreme Court again broadly interpreted article XIII, section 32. The plaintiffs in that case sought to prevent the Board from requiring them to furnish information concerning the land and rights-of-way on which certain pipelines were located. (Western Oil & Gas, supra, 44 Cal.3d at p. 211.) The Board sought the information in order to assess the plaintiffs' tax liability. The trial court found article XIII, section 32 was "inapplicable" *1247 to the case, reasoning that the plaintiffs "were not seeking to prevent assessment but only to prevent being compelled to furnish certain information." (Western Oil & Gas, at p. 213.) The Court of Appeal affirmed the trial court's order granting the plaintiffs a writ of mandate and injunctive and declaratory relief. (Id. at p. 212.) The Supreme Court reversed. The court reasoned: "[Article XIII, section 32] applies if the prepayment judicial determination sought would impede tax collection. [Citations.] That an action turns on a challenge to the Board's demands for information does not alone lift the constitutional bar." (Id. at p. 213.)
Similarly, in Brennan v. Southwest Airlines Co. (9th Cir. 1998) 134 F.3d 1405, 1410 (Brennan), the Ninth Circuit rejected an interpretation of federal tax law that would allow plaintiffs to "evade the strictures" of section 7422(a) of title 26 of the United States Code, a statute similar to section 6932.[10] (Brennan, at p. 1410.) There, the defendant airlines collected from the plaintiffs an excise tax which Congress did not authorize. Rather than filing a claim for a refund with the Internal Revenue Service (IRS) before filing suit, as federal tax law required, the plaintiffs filed suit in state court against the airlines for unlawful business practices, breach of contract, declaratory relief and an accounting. (Id. at p. 1408.)
The defendants removed the case to federal district court on the grounds that the plaintiffs were effectively pursuing a refund of federal taxes, which raised an issue of federal law. The plaintiffs moved to remand the case on the grounds that they had not filed a federal tax refund suit and thus the district court did not have subject matter jurisdiction over their state law claims. The Ninth Circuit thus was required to determine whether the plaintiffs had filed a tax refund suit, as the defendants contended. (Brennan, supra, 134 F.3d at p. 1409.)
The Ninth Circuit answered that question in the affirmative, and affirmed the district court's denial of the plaintiffs' motion to remand the case. In so doing, the court rejected the plaintiffs' attempt to use consumer remedy laws to adjudicate what the court concluded was in reality a tax refund case. The court noted that the Internal Revenue Code provided the exclusive remedy in tax refund suits and thus preempted state law claims that sought tax refunds. (Brennan, supra, 134 F.3d at p. 1409.) The court further stated that accepting the plaintiffs' argument would allow a taxpayer to avoid the tax refund statute *1248 every time a citizen who sought a tax refund alleged the tax was collected without authority. (Id. at p. 1410.) The court reasoned that the plaintiffs' arguments militated against one of the distinct purposes of the tax refund statute in that the plaintiffs' theory would not "`afford the Internal Revenue Service an opportunity to investigate tax claims and resolve them without the time and expense of litigation.' [Citation.]" (Id. at p. 1411; see also Batt v. City and County of San Francisco (2007) 155 Cal.App.4th 65, 85 [65 Cal.Rptr.3d 716] [rejecting the "idea that a taxpayer can `maintain a common law reimbursement action based on principles of restitution and constructive trust without complying with statutory conditions, specifically . . . administrative claim requirements'"].)
Likewise, in this case, by seeking an injunction prohibiting Target from collecting sales tax reimbursement from customers, plaintiffs are attempting to circumvent the prohibition of injunctions against the collection of sales taxes in article XIII, section 32 and Revenue and Taxation Code section 6931. For example, if the trial court concluded that sales tax was not due on purchases of hot coffee "to go" at Target and enjoined Target from collecting sales tax reimbursement on such purchases, Target might rely on the court's decision to stop paying sales tax on these purchases. Accordingly, the net result of an injunction against Target would be a restraint on collection of sales tax by the state, which is precisely what is prohibited by article XIII, section 32, its underlying policies, and section 6931.[11]
(21) Further, just as the plaintiffs in Brennan sought to evade IRS review of their claims, plaintiffs here seek an injunction, damages and restitution without providing the Board with an opportunity to administratively determine the merits of plaintiffs' interpretation of the sales tax laws. This is not permitted by the sales tax statutes and their underlying policies. Although the Board's interpretation of the tax laws does not bind the courts, the Board has expertise regarding sales tax issues that is entitled to consideration and respect. (Yamaha Corp. of America v. State Bd. of Equalization (1998) 19 Cal.4th 1, 7, 11 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) Further, circumventing the claims process could result in involving the Board, retailers and customers in unnecessary litigation. This undermines the policy underlying section 6932, which is to give the Board an opportunity to correct any mistakes, thereby avoiding the cost of litigation and the consumption of judicial resources. (See Preston, supra, 25 Cal.4th at p. 206.)
*1249 In addition, allowing suits such as plaintiffs' might lead to situations in which a retailer would be required to refund sales tax reimbursements to customers but could not recover associated sales taxes from the government. (See Brennan, supra, 134 F.3d at p. 1411.) For example, the statute of limitations for a UCL action is four years (Bus. & Prof. Code, § 17208), while the statute of limitations for a claim with the Board is three years (Rev. & Tax. Code, § 6902, subd. (a)(1)). Customers therefore could recover a refund of payments they made to Target between three and four years prior to commencing their action, even if Target passed those payments on to the state, and even though Target would be time-barred from recovering those payments from the state.
Moreover, excluding the Board from sales tax disputes could lead to inconsistent results. For instance, the trial court here could determine that sales tax is not due on purchases of hot coffee "to go" at Target. However, another court might come to the opposite conclusion in a lawsuit filed by Target or a similarly situated retailer against the Board. Because the Board is not a party to this action, it would not be bound by the principles of res judicata and collateral estoppel in subsequent actions by Target or similarly situated retailers. (See 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 452 et seq.) Therefore, requiring customers to seek refunds of sales tax reimbursement only in the manner provided by the sales tax statutes will reduce the likelihood of inconsistent rulings by the courts.
(22) Article XIII, section 32 and the "orderly administration of the tax laws" (Decorative Carpets, supra, 58 Cal.2d at p. 255) require strict adherence to statutory procedures for the administration of the sales tax law. Plaintiffs therefore may not circumvent the means set forth by the Legislature to resolve sales tax disputes by pursuing UCL, CLRA, and money had and received causes of action.

6. Plaintiffs and Other Customers Have Remedies to Recover Excess Sales Tax Reimbursement Paid to Retailers

(23) Plaintiffs argue that our decision leaves customers without a remedy when they pay excess sales tax reimbursement to retailers. This is not true. If a retailer, after exhausting its administrative remedies, prevails in a sales tax refund action against the Board, the retailer must refund associated sales tax reimbursement to customers. (Decorative Carpets, supra, 58 Cal.2d at p. 256.)
Customers may also obtain a refund of excess sales tax reimbursement paid to retailers without litigation. The Board may review whether a customer paid excess sales tax reimbursement in the course of responding to a claim *1250 filed by a retailer. It may also on its own initiative, or in response to a complaint by a customer, examine a retailer's tax returns or conduct an audit of the retailer's books and records. (See §§ 6481, 7054; Reg. 1700, subd. (b)(3)(A); Riley B's, Inc. v. State Bd. of Equalization (1976) 61 Cal.App.3d 610, 615 [132 Cal.Rptr. 520] [Board conducting audit].)[12] As we have explained, if the Board concludes that excess sales tax reimbursement was collected, the retailer is required to make refunds to its customers (or to the state if it is not refunded to the customers). (§ 6901.5; Reg. 1700.)
Plaintiffs argue that these remedies are insufficient because, for a variety of reasons, retailers may choose not to file a claim with the Board, or the Board may choose not to conduct a review or an audit, or the Board may make an incorrect decision that is not challenged in court by a retailer. These arguments are better suited for the Legislature than the courts. Article XIII, section 32, prohibits the courts from expanding the remedies expressly provided by the Legislature for sales tax refunds and associated sales tax reimbursement. (See Woosley, supra, 3 Cal.4th at p. 792.)
Plaintiffs and supporting amici curiae argue that the court should take into account the policies underlying the UCL and the CLRA. A similar issue was addressed in California Logistics. There the state made a determination that delivery drivers used by the plaintiff were employees and not independent contractors, which resulted in additional tax liability for the plaintiff. (California Logistics, supra, 161 Cal.App.4th at p. 245.) The plaintiff alleged that the state had previously unsuccessfully challenged the independent contractor status of the drivers in administrative and judicial proceedings. (Id. at pp. 245-246.) Based on this allegation, the plaintiff sought declaratory and injunctive relief regarding its tax liability on the ground that the state was collaterally estopped from asserting that the plaintiff's delivery drivers were employees. (Id. at p. 246.)
The court, however, held that article XIII, section 32 barred the plaintiff's action. After acknowledging the important policies promoted by the doctrine of collateral estoppel (California Logistics, supra, 161 Cal.App.4th at p. 249), the court stated: "The California Constitution is `the supreme law of our state' [citation], subject only to the supremacy of the United States Constitution (Cal. Const., art. III, § 1.) The doctrine of collateral estoppel cannot take precedence over [article XIII,] section 32 and require the courts to provide relief which the Constitution specifically prohibits" (id. at p. 250).
Similarly, in this case, the UCL and CLRA and the policies they promote cannot take precedence over article XIII, section 32. Further, "the sales tax *1251 law employs relatively artificial, relatively self-contained, concepts," and thus does not lend itself to interpretation with the use of concepts and policies from other, distinct areas of law. (King v. State Bd. of Equalization (1972) 22 Cal.App.3d 1006, 1010-1011 [99 Cal.Rptr. 802].)
Our Supreme Court has broadly construed article XIII, section 32 in light of the overriding policies behind that provision. Article XIII, section 32 and the policies which it represents bar plaintiffs' action against Target.

DISPOSITION
The judgment is affirmed. Target is awarded costs on appeal.
Klein, P. J., and Aldrich, J., concurred.
NOTES
[1] Except as otherwise indicated, all references to sections are to the Revenue and Taxation Code.
[2] Section 6359, subdivision (a) provides a sales tax exemption for "the gross receipts from the sale of, and the storage, use, or other consumption in this state of, food products for human consumption." This exemption, however, does not apply when "the food products are served as meals on or off the premises of the retailer" (§ 6359, subd. (d)(1)) or when "the food products are sold as hot prepared food products" (§ 6359, subd. (d)(7)). The exemption also does not apply when "the food products sold are furnished in a form suitable for consumption on the seller's premises, and both of the following apply: [¶] (A) Over 80 percent of the seller's gross receipts are from the sale of food products. [¶] (B) Over 80 percent of the seller's retail sales of food products are sales subject to tax pursuant to paragraph (1), (2), (3), or (7)." (§ 6359, subd. (d)(6).)
[3] Regulation 1603 sets forth specific rules regarding the application of sales tax to the sale of food products. We do not decide whether the sale of hot coffee "to go" at Target violated section 6359 or regulation 1603.
[4] For purposes of this appeal, we assume that the material facts in plaintiffs' FAC and SAC are true. (Rakestraw v. California Physicians' Service (2000) 81 Cal.App.4th 39, 43 [96 Cal.Rptr.2d 354] (Rakestraw).)
[5] By contrast, the use tax is levied upon the purchaser. (Bank of America v. State Bd. of Equal. (1962) 209 Cal.App.2d 780, 799 [26 Cal.Rptr. 348]; § 6202.) A use tax is an excise tax imposed on tangible personal property purchased from any retailer for storage, use or other consumption in California. (§ 6201.) Property subject to sales tax is exempt from use tax. (§ 6401.)
[6] Plaintiffs have not cited any legislative history, and we have none, that supports plaintiffs' position.
[7] This provision of regulation 1700 provides: "Whenever the board ascertains that a person has collected excess tax reimbursement, the person will be afforded an opportunity to refund the excess collections to the customers from whom they were collected." (Italics added.)
[8] Section 6931 states: "No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against this State or against any officer of the State to prevent or enjoin the collection under this part of any tax or any amount of tax required to be collected."
[9] Plaintiffs do not contend that they may obtain an injunction pursuant to section 6901.5 or pursuant to their common law cause of action for money had and received.
[10] The federal statute provides in part: "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." (26 U.S.C. § 7422(a).)
[11] Plaintiffs cannot plead around article XIII, section 32 and Revenue and Taxation Code section 6931 by recasting their causes of action as violations of the UCL and the CLRA. (See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal.4th 163, 182 [83 Cal.Rptr.2d 548, 973 P.2d 527] ["A plaintiff may . . . not `plead around' an `absolute bar to relief' simply `by recasting the cause of action as one for unfair competition.'"].)
[12] Plaintiffs do not deny that they may contact the Board to request an audit, but do not allege that they have done so.