## PAMELA BLASS *v.* RITE AID OF CONNECTICUT, INC.*

Superior Court, Judicial District of Hartford
File No. CV-09-5026554-S

Memorandum filed August 7, 2009

*Steven E. Arnold* and *Peter M. Van Dyke*, for the plaintiff.

*Charles L. Howard* and *Laurie A. Sullivan*, for the defendant.

SHELDON, J. This case arises out of a retail sales transaction on May 15, 2008, in which the defendant, Rite Aid of Connecticut, Inc. ("Rite Aid"), collected $0.24 in sales tax from the plaintiff, Pamela Blass, on

---

* Affirmed. *Blass* v. *Rite Aid of Connecticut, Inc.*, 127 Conn. App. 569, 16 A.3d 737 (2011).

the $3.96 gross sales price of four items valued at $0.99 apiece before subtracting the full face value of two $1.00 coupons she had submitted in partial payment for the purchase. The plaintiff, who seeks to represent herself and a class of similarly situated Rite Aid customers in this matter,[1] claims that Rite Aid's practice of charging sales tax on the gross sales prices of customers' purchases before subtracting the full face value of coupons therefrom, constitutes the miscollection of sales tax on coupons, which are exempt from sales taxation under the Connecticut Sales and Use Taxes Act ("Sales Tax Act"), General Statutes § 12-407 (a) (8) (B), and thus, allegedly, an unfair or deceptive trade practice under the Connecticut Unfair Trade Practices Act ("CUTPA"), General Statutes § 42-110a et seq.

The defendant has moved this Court under § 10-30 of the Connecticut Practice Book to dismiss this case for lack of subject matter jurisdiction. As grounds for the Motion, the defendant claims that the plaintiff has failed to exhaust her administrative remedies for miscollection of sales tax under relevant provisions of the Sales Tax Act, more particularly General Statutes § 12-425[2] and § 12-422.[3] The defendant has supported its Motion with a memorandum of law.

The plaintiff opposes the defendant's Motion on two grounds: first, that the exhaustion doctrine is assertedly inapplicable to her claim because the remedy afforded to her by the cited provisions of the Sales Tax Act is "futile or inadequate"; and second, that notwithstanding the availability of that administrative remedy, CUTPA furnishes her an independent basis for pursuing relief

---

[1] No class has yet been certified.

[2] See footnote 4.

[3] General Statutes § 12-422 allows taxpayers dissatisfied with the Commissioner of Revenue Services' decision under § 12-425 to appeal to the Superior Court for the judicial district of New Britain.

in this action for a separate legal injury of the sort that that remedy was not designed to redress.

## STANDARD OF REVIEW

Any defendant wishing to contest the court's jurisdiction may do so by filing a motion to dismiss. Practice Book § 10-31. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) *Filippi* v. *Sullivan*, 273 Conn. 1, 8, 866 A.2d 599 (2005). "When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) Id. "A motion to dismiss raises the question of whether a jurisdictional flaw is apparent on the record or by way of supporting affidavits." *Carl J. Herzog Foundation, Inc.* v. *University of Bridgeport*, 41 Conn. App. 790, 793, 677 A.2d 1378 (1996), rev'd on other grounds, 243 Conn. 1, 699 A.2d 995 (1997). "[T]he plaintiff bears the burden of proving subject matter jurisdiction, whenever and however raised." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 265 Conn. 423, 430 n.12, 829 A.2d 801 (2003).

## ANALYSIS

The doctrine of exhaustion of administrative remedies "is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit

of the agency's findings and conclusions." *Concerned Citizens of Sterling* v. *Sterling*, 204 Conn. 551, 557, 529 A.2d 666 (1987). "The doctrine of exhaustion furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review." (Internal quotation marks omitted.) Id. "[W]here . . . there is a mechanism in place for adequate judicial review, the exhaustion doctrine requires that the government agency to which the administrative decision-making responsibility has been delegated be afforded the opportunity to determine whether it has jurisdiction or authority to act in a particular situation." *Francini* v. *Zoning Board of Appeals*, 228 Conn. 785, 794, 639 A.2d 519 (1994). Therefore, when the legislature, as part of a comprehensive statutory scheme to regulate a particular aspect of human activity, prescribes particular remedies for particular statutory violations and establishes a particular procedure for pursuing them, a person seeking redress for such a statutory violation must pursue such remedies through such procedures before resorting to the courts.

There are two exceptions to the exhaustion doctrine, understood as aforesaid. The first exception applies in situations where the administrative remedy is "futile or inadequate." An administrative remedy is futile or inadequate if "the agency is without authority to grant the requested relief." (Internal quotation marks omitted.) *Neiman* v. *Yale University*, 270 Conn. 244, 259, 851 A.2d 1165 (2004). It is futile for the plaintiff to seek a remedy only when that action could not result in a favorable decision and invariably would result in further judicial proceedings. Id. The second exception applies in circumstances where the conduct complained of violates not only the statute whose alleged violation the administrative remedy is intended to remedy but separate rights of or duties owed to the plaintiff under other

statutes or other law. To the degree that the plaintiff seeks redress for alleged violation of such a separate right or duty instead of for violation of the statute for which the administrative remedy is provided, no purpose is served by requiring her to exhaust that remedy prior to suing on the separate breach of duty.

Against this background, a Court considering the merits of an exhaustion claim must carefully examine both the plaintiff's complaint and the statute prescribing the administrative remedy he is claimed not to have exhausted. *Savoy Laundry, Inc.* v. *Stratford,* 32 Conn. App. 636, 640, 630 A.2d 159, cert. denied, 227 Conn. 931, 632 A.2d 704 (1993). The question presented by this examination is whether the issues raised in the complaint are the very issues which the administrative remedy statute was intended to test and resolve. Id., 641. If they are, the remedy must ordinarily be exhausted before the plaintiff can file an action in court.

In this case, as previously noted, the plaintiff has based her CUTPA claim against the defendant upon a single alleged violation of the Sales Tax Act, to wit: the defendant's alleged collection from her of $0.24 in sales tax on the gross sale price of four items valued at $0.99 apiece before subtracting the full face value of two $1.00 coupons from the price. Such conduct, she claims, caused her injury by miscollecting from her the sum of $0.12 in sales tax that she should not have been required to pay under General Statutes § 12-408 (1).

Section 12-408 (1) provides in relevant part that "a tax is hereby imposed on all retailers at the rate of six per cent of the gross receipts of any retailer from the sale of all tangible personal property sold at retail or from the rendering of any services constituting a sale in accordance with subdivision (2) of subsection (a) of section 12-407 . . . ."

As used in this statute, the term "gross receipts" is defined by § 12-407 (a) (9) (A) to mean "the total amount of the sales price from retail sales of tangible personal property by a retailer," excluding "the full face value of any coupon used by a purchaser to reduce the price paid to the retailer for an item of tangible personal property, whether or not the retailer will be reimbursed for such coupon, in whole or in part, by the manufacturer of the item of tangible personal property or by a third party . . . ." General Statutes § 12-407 (a) (9) (B).

Similarly, the term "sales price," as used in the foregoing definition and in § 12-407 (a) (8) (A), is defined to mean "the total amount for which tangible personal property is sold by a retailer," excluding "the full face value of any coupon used by a purchaser to reduce the price paid to a retailer for an item of tangible personal property, whether or not the retailer will be reimbursed for such coupon, in whole or in part, by the manufacturer of the item of tangible personal property or by a third party . . . ." General Statutes § 12-407 (a) (8) (B).

Read together, claims the plaintiff, the foregoing statutes conclusively establish that the defendant miscollected sales tax from her in the amount of $0.12.

In light of this particular claim of injury, the questions presented under the exhaustion doctrine, as the parties have disputed it on this Motion, are threefold: first, whether the administrative remedy which the defendant claims the plaintiff should have exhausted before filing this action was intended by the legislature to serve as the primary or exclusive means of redressing this particular type of injury; second, if it was, whether that remedy has become so futile or inadequate as to relieve the plaintiff of what would otherwise be her obligation to exhaust it before filing suit; and third, whether or not the conduct complained of also violated other rights of the plaintiff or duties owed to her under CUTPA, for

which she should not be prevented from seeking relief in this forum because the unexhausted administrative remedy was not intended to redress them.

The administrative remedy here invoked by the defendant is set forth in § 12-425, which is an integral part of the Sales Tax Act. General Statutes § 12-406 et seq. The Sales Tax Act is a comprehensive set of statutes which establish, inter alia, the obligation of consumers to pay sales tax on certain tangible goods and services, the obligation of retailers to collect such taxes on behalf of the State and to remit them to the Department of Revenue Services ("DRS"), the power of the Commissioner of Revenue Services ("Commissioner") to promulgate and enforce administrative regulations governing the payment collection and remission of sales taxes and otherwise to enforce all obligations arising under the Act.

Section 12-425[4] provides that a person who has overpaid sales tax may pursue a refund of the amount of

[4] General Statutes § 12-425 provides in full as follows: "Overpayments and refunds. (1) Claim limitation period. No refund shall be allowed unless a claim therefor is filed with the commissioner within three years from the last day of the month succeeding the period for which the overpayment was made, or, with respect to assessments made under sections 12-415 and 12-416, within six months after the assessments become final. No credit shall be allowed after the expiration of the period specified for filing claims for refund unless a claim for credit is filed with the commissioner within such period, or unless the credit relates to a period for which a waiver is given pursuant to subsection (g) of section 12-415.

"(2) Conditions; sales tax reimbursement. No credit or refund of any amount paid pursuant to section 12-411 shall be allowed on the ground that the storage, acceptance, consumption or other use of the services or property is exempted under subdivision (1) of section 12-413, unless in addition to the overpayment for which the claim is filed the claimant also has reimbursed the claimant's vendor for the amount of the sales tax imposed upon the claimant's vendor with respect to the sale of the property and paid by the vendor to the state.

"(3) Form and content of claim. Every claim shall be in writing and shall state the specific grounds upon which the claim is founded.

"(4) Effect of failure to file claim. Failure to file a claim within the time prescribed in this section constitutes a waiver of any demand against the

his overpayment by filing a written claim therefor with the Commissioner of Revenue Services not later than three years from the end of the month for which such overpayment was made. The statute provides that such claim shall state the specific grounds upon which it is made, and that failure to file a timely claim in the form prescribed by the statute shall constitute a waiver of any demand against the State on account of overpayment. The Commissioner is empowered by the statute to determine whether such claim is valid and, if so, shall notify the State Comptroller of the amount of the refund to which the claimant is entitled. If, however, the Commissioner determines that the claim is not valid, in whole or in part, he shall mail notice of the proposed

state on account of overpayment.

"(5) Determination of validity. Notice of action. (A) The commissioner, upon receipt of such claim for refund, shall determine whether such claim is valid and, if so, shall notify the State Comptroller of the amount of such refund and the State Comptroller shall draw an order on the State Treasurer for payment of such refund. If the commissioner determines that such claim is not valid, either in whole or in part, he shall mail notice of the proposed disallowance to the claimant in the manner prescribed for service of notice of a deficiency assessment. Sixty days after the date on which it is mailed, a notice of proposed disallowance shall constitute a final disallowance except only for such amounts as to which the claimant has filed, as provided in subparagraph (B) of this subdivision, a written protest with the commissioner.

"(B) On or before the sixtieth day after the mailing of the proposed disallowance, the claimant may file with the commissioner a written protest against the proposed disallowance in which the claimant sets forth the grounds on which the protest is based. If a protest is filed, the commissioner shall reconsider the proposed disallowance and, if the claimant has so requested, may grant or deny the claimant or the claimant's authorized representatives an oral hearing.

"(C) The commissioner shall mail notice of his determination to the claimant, which notice shall set forth briefly the commissioner's findings of fact and the basis of decision in each case decided in whole or in part adversely to the claimant.

"(D) The action of the commissioner on the claimant's protest shall be final upon the expiration of one month from the date on which he mails notice of his action to the claimant unless within such period the claimant seeks judicial review of the commissioner's determination pursuant to section 12-422."

disallowance to the claimant in the manner prescribed for a notice of deficiency assessment. Within sixty days thereafter, the claimant may file with the Commissioner a written protest in which he sets forth the grounds therefor. In response to such a protest, the Commissioner shall reconsider the proposed disallowance and may order a hearing on the question. Ultimately, the Commissioner shall finally determine the protest and mail written notice of his determination to the claimant. That determination shall become final unless the plaintiff appeals from it to this Court. The statute thus establishes a detailed yet simple procedure by which any consumer who claims to have overpaid sales tax on tangible goods or services must seek a refund of such overpayment tax or forever waive her right to do so. It is apparent from the examination of this statute that it was specifically designed to afford a remedy for the very type of injury of which the plaintiff here complains.

Importantly, moreover, the Sales Tax Act expressly affords any person aggrieved by the decision of the Commissioner on a request for relief under § 12-425 the right to appeal to this Court. An appeal from the Commissioner's determination under § 12-425, in turn, is governed by General Statutes § 12-422, which provides in relevant part as follows: "Any taxpayer aggrieved because of any order, decision, determination or disallowance of the Commissioner of Revenue Services under section . . . 12-425 may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of New Britain, which shall be accompanied by a citation to the Commissioner of Revenue Services to appear before said court. . . . Such appeals shall be *preferred cases*, to be heard, unless cause appears to the contrary, at the first session, by the court or by a committee appointed by it. *Said court may grant such relief as*

*may be equitable* and, if such tax has been paid prior to the granting of such relief, may order the Treasurer to pay the amount of such relief, with interest at the rate of two-thirds of one per cent per month or fraction thereof, to the aggrieved taxpayer . . . ." (Emphasis added.) General Statutes § 12-422.

By affording an aggrieved applicant for a refund of miscollected sales tax an appeal to this Court, and proving that such appeal will be a "preferred case" in which the court "may grant such relief as may be equitable," this statute makes clear the intention of the legislature to require all persons who wish to obtain refunds of overpaid sales tax to utilize such statutory procedures to obtain the full measure of relief to which they are equitably entitled by reason of the overpayment. A plaintiff's failure to exhaust such remedies before bringing suit for miscollection of sales tax in any other kind of legal proceeding is a defect in the subject matter jurisdiction of this Court.

As for the plaintiff's claim that she should be excused from exhaustion of her administrative remedies under the above described provision of the Sales Tax Act, it is readily apparent that the only reason for this assertion is her understandable desire to fund this claim through the attorney's fees and punitive damages provision of CUTPA, which have no express counterparts under the Sales Tax Act itself. The plaintiff's desire for other or greater relief than that provided by law, however, affords her no basis for claiming that the remedies provided by the Legislature are inadequate; *Savoy Laundry, Inc.* v. *Stratford,* supra, 32 Conn. App. 640; and of course the plaintiff has no experiential basis for so claiming since she has never attempted to invoke those administrative remedies. In short, there is simply no basis for claiming, as the plaintiff must prove to invoke the "futile or inadequate" exception to the rule, that the Commissioner, in the first instance, or this

Court, on a subsequent appeal, is incapable of granting the relief made available by law for the injury here claimed. Indeed, it quite clearly appears that the contrary is true, especially since the Court on appeal is empowered, without limitation, to grant "whatever relief as may be equitable" in the circumstances presented.

This brings us finally to the plaintiff's argument that she should not be required to exhaust her administrative remedies under the Sales Tax Act because the injury she complains of violated a separate legal duty owed to her by the defendant under CUTPA, which the unexhausted administrative remedies here at issue were not designed or intended to redress. If such a separate duty was violated, no purpose would be served by requiring her to exhaust her administrative remedies, for the Legislature could not be found to have created those remedies for the purpose of redressing those conceptually independent legal wrongs. For the following reasons, the Court concludes that the argument has no merit.

There are three reasons why the plaintiff's invocation of CUTPA is inappropriate for tax miscollection. First, as stated in the foregoing analysis, the plaintiff must seek *one* remedy as she has alleged *one* harm. The Legislature has outlined a comprehensive remedial process for tax miscollection. Invoking a separate statutory procedural prescription, such as CUTPA, threatens to disrupt the administrative process that already occupies the field of tax miscollection. The Legislature most likely did not want to subject retailers that act on behalf of the State when collecting taxes *both* to penalties under the Sales Tax Act *and* to civil actions based on other statutes. Had the Legislature wanted retailers to answer to consumers for the miscollection of taxes, it could easily have conferred that right upon them in the Sales Tax Act statute itself, which it did not.

Second, the application of CUTPA is inappropriate because that law seeks to protect consumers from "deceptive acts or practices *in the conduct of any trade or commerce.*" (Emphasis added.) General Statutes § 42-110b (a). "The purpose of CUTPA is to protect the public from unfair practices in the conduct of any trade or commerce, and whether a practice is unfair depends upon the finding of a violation of an identifiable public policy." (Internal quotation marks omitted.) *Eder Bros., Inc.* v. *Wine Merchants of Connecticut, Inc.*, 275 Conn. 363, 380, 880 A.2d 138 (2005). The Legislature has expressly stated that in construing CUTPA the courts shall be guided by interpretations of the Federal Trade Commission Act (FTCA), 15 U.S.C. § 45 (a) (1). General Statutes § 42-110b (b). Accordingly, our Supreme Court has held: "[A] plaintiff may bring a CUTPA claim that is predicated upon the public policy embodied in another statute, irrespective or whether that conduct in question is expressly prohibited by the letter of that statute, *so long as the claim is consistent with the regulatory principles established by the underlying statute.*" (Emphasis added; internal quotation marks omitted.) *Eder Bros., Inc.* v. *Wine Merchants of Connecticut, Inc.*, supra, 381.

The miscollection of taxes, whether negligent or intentional, does not constitute an unfair or deceptive act or practice in the conduct of any trade or commerce under the language of CUTPA or the FTCA. A retailer gains no personal benefit from the overcollection of taxes. In fact, such activity only increases the retailer's prices, working against its economic interest. When a retailer overcharges sales tax, the customer's overall purchase price increases. Customers charged more per transaction are more likely to reduce purchases made from the retailer or, more harmful still, to shop at competing stores. Likewise, the defendant's action in this case was not commercial because when it collected the

plaintiff's money for taxes, it did so as an agent of the State. There is no allegation that the defendant kept any of the miscollected taxes for itself. On the contrary, the plaintiff concedes that all the taxes collected from her were remitted to the Commissioner, further supporting the notion that the plaintiff's true and only claim is against the State, not the defendant.

Third, General Statutes § 42-110c (a) expressly excludes from CUTPA all "[t]ransactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the [S]tate or of the United States . . . ." The defendant's actions are of this very sort. It collects taxes for the State under the regulatory authority of the Commissioner. Should the defendant violate any provision of the Sales Tax Act, it is subject to the regulatory authority of the Commissioner. Section 42-110c (a) thus appears to be a preemptive move by the Legislature to exempt from CUTPA all conduct that is subject to other comprehensive regulatory schemes. For example, in *Connelly* v. *Housing Authority*, 213 Conn. 354, 361, 567 A.2d 1212 (1990), the Connecticut Supreme Court upheld a summary judgment, denying the plaintiff's CUTPA action against a municipal housing authority because its relevant conduct was regulated by the United States Department of Housing and Urban Development ("HUD"), and thus was excluded from the scope of the statute under § 42-110c (a). Although the *Connelly* Court recognized that municipal housing authorities typically engage in commercial activities, such as the leasing and renting of apartments, that fall within the purview of CUTPA, "the actions of the defendant, a creature of statute, are expressly authorized and pervasively regulated by both the state department of housing and HUD." Id.

The foregoing analysis is entirely consistent with similar claims that have been dismissed for failure to

exhaust remedies in this state and in other jurisdictions. In *Peruta* v. *Emcon Cheshire, Ltd.*, Superior Court, judicial district of New Britain, Docket No. CV-05-4004390-S (June 8, 2006) (41 Conn. L. Rptr. 552), Judge Shaban dismissed a similar claim for lack of subject matter jurisdiction because the plaintiffs had failed to exhaust their administrative remedies. There, the plaintiffs alleged that the defendant had improperly collected sales tax on their purchase of certain food items allegedly exempt from sales taxation. There, as here, the plaintiffs claimed that the defendant's actions violated CUTPA, specifically because it had negligently miscollected the tax. The Court ruled that after "review[ing] the pleadings . . . regardless of how the defendant has characterized its motion and structured its request for action by the court, the plaintiffs have failed to exhaust their administrative remedies relative to their claim." Id.

Other states have reached the same conclusion when improper sales tax collection has been challenged under consumer protection laws similar to CUTPA. A California appellate court upheld a trial court's dismissal of a class action lawsuit against Target, Inc., for improperly collecting sales tax on "take-out" hot coffee, in alleged violation of the state's unfair competition law. *Loeffler* v. *Target Corp.*, 173 Cal. App. 4th 1229, 93 Cal. Rptr. 3d 515 (2009). The *Loeffler* Court rejected the plaintiff's attempt to use consumer remedy laws to adjudicate what it concluded was in "reality a tax refund case." Id., 1247. It found that the plaintiff's success in such an action would undermine the policy which gives the tax revenue board an opportunity to correct any mistakes through process outlined in California's sales tax act, thereby avoiding the costs of litigation and the undue expenditure of judicial resources. Id. The Massachusetts Supreme Judicial Court has also upheld a trial court's decision to dismiss a class action lawsuit against

Dell, Inc., based on allegedly improper sales tax collection under the State's unfair or deceptive practices act, because "[w]here a party's actions are motivated by legislative mandate," the unfair or deceptive practices act does not apply. (Internal quotation marks omitted.) *Feeney* v. *Dell, Inc.*, 454 Mass. 192, 212, 908 N.E.2d 753 (2009). The Court there stated that the plaintiff's claim was not commercial in nature because it was based on a component of the transaction—the collection of taxes—which is not motivated by " 'business or personal reasons,' "; id.; and thus fell outside the purview of the statute.

## CONCLUSION

For the reasons set forth above, the defendant's Motion to Dismiss is GRANTED.