171 Cal.App.4th 645 (2009)
KWIKSET CORPORATION et al., Petitioners,
v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
JAMES BENSON et al., Real Parties in Interest.
No. G040675.
Court of Appeals of California, Fourth District, Division Three.
February 25, 2009.
*648 Jones, Bell, Abbott, Fleming & Fitzgerald, Michael J. Abbott, Fredrick A. Rafeedie and William M. Turner for Petitioners.
No appearance for Respondent.
Soltan & Associates, Venus Soltan; Coughlin Stoia Geller Rudman & Robbins, Pamela M. Parker, Kevin K. Green; Cuneo Gilbert & LaDuca, Jonathan W. Cuneo and Michael G. Lenett for Real Parties in Interest.

OPINION
RYLAARSDAM, J.
This petition for a writ of mandate seeks to vacate an order of respondent superior court overruling petitioners' demurrer to the second amended complaint in the underlying action, Benson v. Kwikset Corp. (Super. Ct. Orange County, 2002, No. 00CC01275). Petitioners Kwikset Corporation and Black & Decker Corporation contend the real parties in interest failed to allege facts establishing their standing under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.; UCL; all further statutory references are to this code unless otherwise indicated) and the false advertising law (§ 17500; FAL) as required by this court's ruling in Benson v. Kwikset Corp. (2007) 152 Cal.App.4th 1254 [62 Cal.Rptr.3d 284]. In addition, petitioners argue the complaint cannot truthfully be amended to overcome the defect.
We conclude the second amended complaint fails to adequately allege real parties in interest suffered economic injury resulting from petitioners' use of false country of origin labels on their products. In addition, we conclude real parties in interest have not carried their burden of showing a reasonable possibility of amending the complaint to allege the requisite economic injury. Consequently, we shall direct the trial court to vacate its ruling, enter a new order sustaining the demurrer without leave to amend, and thereafter enter a judgment dismissing the underlying action.

FACTS

1. Background

In 2000, real party in interest James Benson filed this action "on behalf of the general public." The original complaint contained four counts, three of which asserted violations of the UCL for unlawful, unfair, and fraudulent business practices, and a fourth brought under the FAL for false advertising. *649 The counts alleged petitioners violated several state and federal statutes, including section 17533.7 and Civil Code section 1770, subdivision (a)(4) of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.; CLRA), by marketing and selling locksets with "Made in U.S.A." or similar labels although the products contained foreign-made parts or involved foreign manufacture. The prayer sought injunctive relief and restitution for "monies wrongfully acquired and retained by [petitioners'] ... acts of unfair competition...."
Shortly after Benson filed this lawsuit, petitioners learned about an unrelated investigation by the United States Federal Trade Commission (FTC) concerning the country of origin labeling on their products. In late 2000, petitioners entered into a consent order with the FTC restricting their use of such labels. (Benson v. Kwikset Corp., supra, 152 Cal.App.4th at p. 1265.)
The underlying action proceeded to a court trial in December 2001. Thereafter, the court issued a statement of decision that found petitioners violated the foregoing statutes between 1996 and 2000 by placing "Made in U.S.A." or similar labels on 25 products which contained either screws or pins made in Taiwan or involved latch subassembly performed in Mexico. Based on its findings, the court entered a judgment enjoining petitioners "from labeling any lockset intended for sale in the State of California `All American Made,' or `Made in USA,' or similar unqualified language, if such lockset contains any article, unit, or part that is made, manufactured, or produced outside of the United States."
The trial court also ordered petitioners to notify its California retailers and distributors of the falsely labeled products and afford them the opportunity to return improperly labeled inventory for either a monetary refund or replacement with properly labeled items. But it denied Benson's request for restitution "to the ultimate consumers," explaining in its statement of decision that "the misrepresentations, even to those for whom the `Made in USA' designation is an extremely important consideration, were not so deceptive or false as to warrant a return and/or refund program or other restitutionary relief to those who have been using their locksets without other complaint."
Both parties appealed from the judgment. While the appeals were pending, the electorate enacted Proposition 64. It amended the UCL and FAL to provide that, except for actions brought by the Attorney General or other public prosecutors, only a "person who has suffered injury in fact and has lost money or property as a result of unfair competition or false advertising may file suit. (§§ 17204 & 17535.) Subsequently, the Supreme Court declared the amendments apply to cases pending when Proposition 64 became effective (Californians for Disability Rights v. Mervyn's, LLC (2006) 39 Cal.4th 223, *650 232-233 [46 Cal.Rptr.3d 57, 138 P.3d 207]), but a party who had filed suit on behalf of the general public before the amendment should be given the opportunity to allege and prove facts satisfying Proposition 64's new standing requirements (Branick v. Downey Savings & Loan Assn. (2006) 39 Cal.4th 235, 242-243 [46 Cal.Rptr.3d 66, 138 P.3d 214]).
In 2007, by a two-to-one vote, this court upheld the trial court's decision on the underlying merits. (Benson v. Kwikset Corp., supra, 152 Cal.App.4th at p. 1284.) But we vacated the judgment and, "[i]n accordance with Branick, ... remand[ed] the case to the trial court" to allow Benson to plead and prove facts giving him standing under the revised statutes. (Id. at p. 1264.) If Benson "successfully allege[d] and prove[d] his right to relief under the unfair competition law and the false advertising law, as amended by Proposition 64," we directed "the court shall reenter its original judgment." (Id. at p. 1284.) However, "[i]f [Benson] fail[ed] to plead or prove his right to maintain this lawsuit, the court shall enter a judgment dismissing the action." (Ibid.)
After the remittitur issued, Benson moved to amend the complaint to add real parties in interest Al Snook, Christina Grecco, and Chris Wilson as named plaintiffs in an attempt to comply with this court's directions in Benson v. Kwikset Corp., supra, 152 Cal.App.4th 1254. The trial court granted the motion. Petitioners challenged the ruling by a writ petition to this court. The petition was summarily denied.
Petitioners then demurred to the amended complaint. The trial court overruled the demurrer. This ruling led to petitioners' second writ petition, the sole basis of which was that real parties in interest could not satisfy the requirements to maintain a class action. This court issued an order denying it as well. A concurring opinion to the order cited this court's recent decision in Hall v. Time Inc. (2008) 158 Cal.App.4th 847 [70 Cal.Rptr.3d 466] and noted it was "hard to comprehend how" real parties in interest had sustained any injury because of petitioners' wrongful conduct.

2. The Current Petition

Both sides reacted to the comments in the concurring opinion. Petitioners filed a motion for judgment on the pleadings, but withdrew it when real parties in interest moved to file a second amended complaint. The trial court granted the latter request.
The amended complaint alleges Benson and each of the other real parties in interest "purchased several Kwikset locksets ... that were represented as `Made in U.S.A.' or [contained] similar designations." When purchasing the *651 locksets each plaintiff "saw and read [d]efendants' misrepresentations . . . and relied on such misrepresentations in deciding to purchase . . . them. [Each plaintiff] was induced to purchase and did purchase [d]efendants' locksets due to the false representation that they were `Made in U.S.A.' and would not have purchased them if they had not been so misrepresented. In purchasing [the] locksets, [each plaintiff] was provided with products falsely advertised as `Made in U.S.A.,' deceiving him [or her] and causing him [or her] to buy products he [or she] did not want. Defendants' `Made in U.S.A.' misrepresentations caused [each plaintiff] to spend and lose the money he [or she] paid for the locksets. [Each plaintiff] has suffered injury and loss of money as a result of [d]efendants' conduct . . . ."
Petitioners demurred to the second amended complaint. They argued "[a] plaintiff does not adequately plead his or her `injury in fact' and `loss of money' under California's [UCL] and [FAL] by simply alleging that he or she was induced by a misrepresentation to spend money to purchase a product."
The trial court overruled the demurrer. It acknowledged "the locksets have intrinsic value as locking devices and may be perfectly useful to other consumers who do not care about the place of a product's origin." But real parties in interest's allegations "they relied upon the alleged misrepresentations on the product packaging and were induced to buy products they did not want[,] . . . suggest[ed] the products were unsatisfactory to them . . . ." Since "[t]he alleged deception" by petitioners "caused the plaintiffs `to buy products [they] did not want,' . . . [t]he court [found the] allegations to be a sufficient statement the plaintiffs suffered injury in fact and lost money or property as a result of the alleged fraud . . . ."

DISCUSSION

1. Introduction

(1) The right to maintain a claim is essential to the existence of a cause of action. (Buckland v. Threshold Enterprises, Ltd. (2007) 155 Cal.App.4th 798, 813 [66 Cal.Rptr.3d 543].) Thus, the issue of a plaintiff's standing to sue may be raised at any time during the pendency of an action, including by demurrer. (Ibid.; Torres v. City of Yorba Linda (1993) 13 Cal.App.4th 1035, 1041 [17 Cal.Rptr.2d 400].)
Writ review of an order overruling a demurrer is governed by "the ordinary standards of demurrer review . . . ." (City of Stockton v. Superior Court (2007) 42 Cal.4th 730, 747 [68 Cal.Rptr.3d 295, 171 P.3d 20].) "[R]eview [of] the complaint [is] de novo to determine whether it contains sufficient facts to state a cause of action. [Citation.]" (Peterson v. Cellco Partnership (2008) 164 *652 Cal.App.4th 1583, 1589 [80 Cal.Rptr.3d 316].) We give the pleading "`a reasonable interpretation, reading it as a whole and its parts in their context'" (Torres v. City of Yorba Linda, supra, 13 Cal.App.4th at p. 1041), "accept as true all properly pleaded material facts, as well as facts that may be implied from the properly pleaded facts [citation], and . . . also consider matters that may be judicially noticed," but "do not assume the truth of contentions, deductions or conclusions of fact or law. [Citation.]" (Peterson v. Cellco Partnership, supra, 164 Cal.App.4th at p. 1589.)

2. Standing

(2) As amended by Proposition 64, a private party may sue under the UCL or FAL only if the party "has suffered injury in fact and has lost money or property as a result of" another's "unfair competition" or false or misleading statements. (§§ 17204 & 17535.) Now a plaintiff pursuing a private UCL or FAL action must "make a twofold showing: he or she must demonstrate injury in fact and a loss of money or property caused by unfair competition [or false advertising]. [Citations.]" (Peterson v. Cellco Partnership, supra, 164 Cal.App.4th at p. 1590; see also Hall v. Time Inc., supra, 158 Cal.App.4th at p. 852.)
(3) When "`interpreting a voter initiative . . ., we apply the same principles that govern statutory construction. [Citation.] Thus, "we turn first to the language of the [initiative], giving the words their ordinary meaning." [Citation.] The [initiative's] language must also be construed in the context of the statute as a whole and the [initiative's] overall . . . scheme.' [Citation.] `Absent ambiguity, we presume that the voters intend the meaning apparent on the face of an initiative measure [citation] and the court may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language.' [Citation.] Where there is ambiguity in the language of the measure, `[b]allot summaries and arguments may be considered when determining the voters' intent and understanding of a ballot measure.' [Citation.]" (Professional Engineers in California Government v. Kempton (2007) 40 Cal.4th 1016, 1037 [56 Cal.Rptr.3d 814, 155 P.3d 226].)
Petitioners contend the trial court erred in overruling the demurrer to the second amended complaint, repeating their claim "[a private] plaintiff does not adequately plead his or her `injury in fact' and `loss of money' under [the UCL or FAL] by simply alleging that he or she was induced by a misrepresentation to buy a product that he or she would not have purchased if he or she had known of the misrepresentation." In response, real parties in interest argue the "injury in fact" requirement is satisfied by the statutes prohibiting misleading country of origin labeling, section 17533.7 and Civil Code section 1770, subdivision (a)(4). As for the "lost money or property" requirement, *653 real parties in interest contend that, as "consumer purchasers . . . deceived into paying for misrepresented products," the money they expended due to petitioners' "unfair competition are amounts `eligible for restitution.'"
(4) Real parties in interest have satisfactorily established they suffered an injury in fact. Courts construe the phrase "injury in fact" to mean "`[a]n actual or imminent invasion of a legally protected interest, in contrast to an invasion that is conjectural or hypothetical.' [Citation.]" (Hall v. Time Inc., supra, 158 Cal.App.4th at p. 853; see also Buckland v. Threshold Enterprises, Ltd., supra, 155 Cal.App.4th at p. 814 [defining "[t]he requisite injury . . . as `an invasion of a legally protected interest which is (a) concrete and particularized, [citations]; and (b) "actual or imminent, not `conjectural' or `hypothetical'"'"].) (5) By enacting section 17533.7, and making a violation of it subject not only to equitable relief but to civil penalties and criminal punishment (§§ 17534 & 17536), plus its enactment of Civil Code section 1770, subdivision (a)(4) as part of the CLRA, the Legislature has declared truthful country of origin product labeling is a legally protected interest. The second amended complaint alleges each named plaintiff read and relied on petitioners' "Made in U.S.A." and similar labels when buying their products. In effect, real parties in interest allege they are persons for whom such labels are an important factor when making purchasing decisions. In addition, real parties in interest allege that, but for the false labeling, they would not have bought petitioners' products.
(6) However, merely alleging the actual invasion of a legally protected interest will not suffice to support standing to maintain this action. Both the UCL and FAL require a plaintiff to also allege and prove he or she "has lost money or property as a result of" the defendant's unfair, unlawful or fraudulent conduct. (§§ 17204 & 17535.) Case law recognizes the revised standing requirements for a private UCL or FAL action "disclose[] a clear requirement that injury must be economic, at least in part, for a plaintiff to have standing . . . ." (Animal Legal Defense Fund v. Mendes (2008) 160 Cal.App.4th 136, 147 [72 Cal.Rptr.3d 553] ["`moral injury'" resulting from the defendants' alleged "violation of anticruelty laws in raising the calves" could not support UCL action because the plaintiffs did not purchase "dairy products that were . . . of inferior quality"].)
In Hall, this court declared: "To lose is `to suffer deprivation of.' [Citation.] A loss is `[a]n undesirable outcome of a risk; the disappearance or diminution of value, usu. in an unexpected or relatively unpredictable way.' [Citation.]" (Hall v. Time Inc., supra, 158 Cal.App.4th at p. 853.) Here, real parties in interest allege "[d]efendants' `Made in U.S.A.' [and similar] misrepresentations caused [them] to spend and lose the money . . . paid for the locksets." But, as petitioners note, they received locksets in return. Real *654 parties in interest do not allege the locksets were defective, or not worth the purchase price they paid, or cost more than similar products without false country of origin labels. Nor have real parties in interest alleged the locksets purchased either were of inferior quality or failed to perform as expected.
Peterson involved an analogous situation. There a communications equipment vendor, although not licensed to do so, sold related insurance policies and retained a portion of the premium as a fee. In affirming the dismissal of the plaintiff's UCL action, this court rejected the construction of "lost money" advanced here, which "encompasses every purchase or transaction where a person pays with money." (Peterson v. Cellco Partnership, supra, 164 Cal.App.4th at p. 1592.) Because the plaintiffs did not allege "they paid more for the insurance due to defendant's collecting a commission," or that "they could have bought the same insurance for a lower price either directly from the insurer or from a licensed agent," Peterson held the "plaintiffs ha[d] not shown they suffered actual economic injury." (Id. at p. 1591.) Rather they "received the benefit of their bargain, having obtained the bargained for insurance at the bargained for price. [Citation.]" (Ibid.)
In rejecting a broad definition of what constitutes "`lost money,'" Peterson cited the facts of Hall, where it was alleged a defendant bookseller, that advertised prospective purchasers could preview a book before deciding to buy it, deceptively sent an invoice demanding payment during the free trial period. (Peterson v. Cellco Partnership, supra, 164 Cal.App.4th at p. 1592.) Peterson noted, "in Hall, the plaintiff `expended money by paying [the seller] $29.51but he received a book in exchange'; therefore he did not lose money or suffer injury in fact. [Citation.]" (Ibid.; see also Medina v. Safe-Guard Products, Internat., Inc. (2008) 164 Cal.App.4th 105, 114 [78 Cal.Rptr.3d 672] [a plaintiff purchasing insurance from unlicensed party did not "suffer[] any loss because of [the defendant's] unlicensed status" where he did "not allege[] that he didn't want [the] coverage in the first place, or that he was given unsatisfactory service or has had a claim denied, or that he paid more for the coverage than what it was worth because of the [defendant's] unlicensed status"].)
(7) Thus, the UCL's and FAL's "lost money or property" requirement "limit[s] standing to individuals who suffer losses . . . that are eligible for restitution." (Buckland v. Threshold Enterprises, Ltd., supra, 155 Cal.App.4th at p. 817; see also Citizens of Humanity, LLC v. Costco Wholesale Corp. (2009) 171 Cal.App.4th 1, 22.) In this context "[t]he object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." (Korea Supply Co. v. Lockheed Martin Corp. (2003) 29 Cal.4th 1134, 1149 [131 Cal.Rptr.2d 29, 63 P.3d 937]; see also Colgan v. Leatherman Tool Group, Inc. (2006) 135 Cal.App.4th 663, 696-697 [38 Cal.Rptr.3d 36] [same].)
*655 Benson originally sought restitution for the ultimate purchasers of petitioners' products. The trial court denied his request, finding that, except for the false country of origin labeling, there had been no other complaint about petitioners' products and thus there was no basis to award the ultimate purchasers restitutionary relief. It cannot be disputed that real parties in interest intended to buy locksets. Absent a showing of some complaint about the cost, quality, or operation of the mislabeled locksets they purchased from petitioners, real parties in interest received the benefit of their bargain and are not entitled to any restitution.
Real parties in interest allege the false country of origin labels "caus[ed them] to buy products [they] did not want." But, in context, this allegation relates to only the injury in fact requirement. As noted, real parties in interest clearly intended to buy locksets. The mere fact they were induced to buy petitioners' locksets because of a "Made in U.S.A." or similar label does not mean real parties in interest "lost money or property" as a result.
(8) Cases other than Hall and Peterson have also recognized a party does not lose money for purposes of maintaining a private UCL or FAL action when he or she receives a product or service of equivalent value in exchange for the payment. In Chavez v. Blue Sky Natural Beverage Co. (N.D.Cal. 2007) 503 F.Supp.2d 1370, a New Mexico native sued the defendants under the UCL, FAL, and CLRA, alleging he purchased their beverages in containers with labels falsely stating the contents were packaged in Santa Fe, New Mexico. The plaintiff "assert[ed] ... damages equal the amount paid for the ... beverages because [he] would not have purchased the drinks had [he] known the drinks and company were no longer related to Santa Fe, New Mexico." (503 F.Supp.2d at p. 1373.) The court dismissed the action, finding the plaintiff "suffered no injury or damages as a result of [d]efendants' conduct. Plaintiff did not pay a premium for [d]efendants' beverages because the drinks purportedly originated in Santa Fe, New Mexico. Accepting the facts as stated ... and drawing all inferences in their favor, [d]efendants' promise concerning geographic origin had no value and [p]laintiffs have suffered no damages by purchasing beverages they thought were produced in New Mexico...." (Id. at p. 1374.)
Another relevant decision is Animal Legal Defense Fund v. Mendes, supra, 160 Cal.App.4th 136. It held economic injury could not be inferred from allegations the plaintiffs "bought milk they otherwise would not have bought if they had thought some of the producing herd may have been raised by respondents in cruel conditions" because they "had the benefit of their bargainthat is, they received dairy products that were not of inferior quality." (Id. at pp. 146-147.)
*656 Decisions finding a plaintiff suing under the UCL or FAL suffered economic injury also support our conclusion. In Aron v. U-Haul Co. of California (2006) 143 Cal.App.4th 796 [49 Cal.Rptr.3d 555], the plaintiff alleged "the use of the [truck's] fuel gauge as the instrument of measurement [wa]s neither accurate nor in accordance with California law regarding weights and measurements," and "the only way to avoid the imposition of [the defendant's refueling] charge was to overfill the fuel tank." (Id. at p. 803.) Aron held that, by alleging he purchased excess fuel before returning the leased vehicle to avoid paying a refueling fee, the plaintiff adequately "set forth a basis for a claim of actual economic injury as a result of an unfair and illegal business practice...." (Ibid.) In Southern Cal. Housing v. Los Feliz Towers Homeow. (C.D.Cal. 2005) 426 F.Supp.2d 1061, the court held a housing rights organization "present[ed] evidence of actual injury based on [the] loss of financial resources" and the "diversion of staff time from other cases to investigate" the defendants' alleged acts of housing discrimination. (Id. at p. 1069.)
Real parties in interest contend our construction of the UCL and FAL, as amended by Proposition 64, will "emasculate" these laws "in meritorious cases" and "relieve[]" petitioners "of all responsibility ... for [their] violations of California's consumer protection statutes." We disagree. As noted above, there are cases where consumers have adequately alleged both injury in fact and a loss of money or property. Furthermore, even as amended, sections 17204 and 17535 allow actions by the Attorney General and other public prosecutors without the need to allege and prove the standing requirements for private plaintiffs. In fact, as noted above, shortly after Benson filed this action petitioners entered into a consent order with the FTC that limited their use of inaccurate country of origin labels. (Benson v. Kwikset Corp., supra, 152 Cal.App.4th at p. 1265.)
(9) By alleging the use of false country of origin labels induced them to buy petitioners' locksets, real parties in interest satisfied the standing requirement that they show injury in fact. It is an injury we fully comprehend and condole: their patriotic desire to buy fully American-made products was frustrated. But without an allegation of "loss of money or property," they cannot show standing under sections 17204 and 17535. Therefore, the second amended complaint does not allege facts sufficient to establish real parties in interest's standing to maintain this UCL and FAL action.

3. Right to Amend

Claiming an adverse ruling would present their "first opportunity ... to amend the post-Proposition 64 standing allegations," real parties in interest contend they should be afforded a chance to do so. Petitioners respond, citing this court's dispositional statement from the prior opinion remanding the case *657 for further proceedings on the standing issue. They further contend real parties in interest cannot carry their burden of showing a reasonable possibility of amending the second amended complaint. (Blank v. Kirwan (1985) 39 Cal.3d 311, 319 [216 Cal.Rptr. 718, 703 P.2d 58].)
Hall, Animal Legal Defense Fund, Chavez, Aron, and many of the other cases cited above were available to inform real parties in interest what factual allegations were necessary to support their allegation of standing to maintain this action. Thus, real parties in interest were on notice that merely alleging they purchased petitioners' locksets in reliance on the products' false labels would not suffice to establish standing.
Real parties in interest make an offer of proof that they "could amend the complaint to ... allege that there were other alternative lockset products available ..., many of which were lower priced than ... [petitioners'] locksets ... or that the value of [petitioners'] locksets was less than what [they] paid ... or the value of the locksets as represented." However, as is generally true of their return, real parties in interest fail to provide any citation to the record or present any documentation to support the assertion there is evidence in the record supporting these proposed amendments.
In addition, as petitioners note, this case has already been through trial and the record fails to support real parties in interest's proposed amendments. For one thing, the current complaint alleges Benson purchased petitioners' products "for himself[] and was not reimbursed." This allegation is contrary to Benson's testimony during discovery and at trial where he stated that, before filing this action, he had only purchased petitioners' products while working as a handyman and was reimbursed for each purchase. Although at trial Benson also testified he purchased petitioners' products after filing suit with funds provided to him by counsel, these transactions cannot support standing on his part either. (Buckland v. Threshold Enterprises, Ltd., supra, 155 Cal.App.4th at pp. 815-816 [party "`cannot, of course, manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit,'" because "`otherwise, any litigant could create injury in fact...'"].)
Real parties in interest's restitution theory also fails because Benson unsuccessfully sought this relief in his original complaint. As mentioned above, in declining to award restitution, the trial court found consumers, including those for whom a "Made in U.S.A." label was an important factor when making a purchase, had used petitioners' locksets "without other complaint." Thus, real parties in interest have failed to show a reasonable possibility they could truthfully amend the complaint to allege facts establishing their standing to maintain this action.

*658 DISPOSITION
The petition is granted. Let a writ of mandate issue ordering respondent to vacate the July 10, 2008 order overruling petitioners' demurrer and to enter a new order sustaining the demurrer without leave to amend and to thereafter enter a judgment dismissing the underlying action. Petitioners shall recover their costs.
Sills, P. J., and Bedsworth, J., concurred.