176 Cal.App.4th 1156 (2009)
RICHARD A. YABSLEY, Plaintiff and Appellant,
v.
CINGULAR WIRELESS, LLC, Defendant and Respondent.
No. B198827.
Court of Appeals of California, Second District, Division Six.
August 19, 2009.
*1159 Pettersen & Bark, William D. Pettersen; Grokenberger & Smith and James H. Smith for Plaintiff and Appellant.
McKenna Long & Aldridge, Ross H. Hyslop, James A. Tabb, Amy H. Ljungdahl and Gary K. Brucker, Jr., for Defendant and Respondent.
Edmund G. Brown, Jr., Attorney General, James Humes, Chief Deputy Attorney General, Frances T. Grunder, Assistant Attorney General, Albert Norman Shelden, Special Assistant Attorney General, and Michele Van Gelderen, Deputy Attorney General, as Amicus Curiae upon request of the Court of Appeal.
Kristine Cazadd, Chief Counsel, Robert W. Lambert, Assistant Chief Counsel, and John L. Waid, Tax Counsel IV, for State Board of Equalization, as Amicus Curiae upon request of the Court of Appeal.

OPINION
PERREN, J. 
Respondent Cingular Wireless, LLC (Cingular), advertised a cellular phone for sale at half the retail price if the purchaser also enrolled in a calling plan package. The California Code of Regulations requires that sales tax be computed on the nonsale price of the product. The regulation permits, but does not require, that the charge be passed on to the customer. Cingular did so without informing the customer prior to sale that the tax would be *1160 based on the full price of the cell phone. The amount of tax is shown on the sales invoice furnished to the customer at the time of sale.
Appellant Richard A. Yabsley alleged that Cingular engaged in unfair competition in violation of Business and Professions Code section 17200[1] and misleading advertising in violation of section 17500 by failing to inform the consumer that the tax would be imposed on the full price of the cell phone. The trial court sustained Cingular's demurrer to Yabsley's first amended complaint without leave to amend finding that the provisions of California Code of Regulations, title 18, section 1585 (Regulation 1585)[2] requiring that the sales tax be calculated based on the nonsale price of the phone and permitting the retailer to collect this amount from the customer provided a "safe harbor" from such claims. We affirm on that basis and also for the reasons stated in the recent decision of Loeffler v. Target Corp. (2009) 173 Cal.App.4th 1229 [93 Cal.Rptr.3d 515].

FACTUAL AND PROCEDURAL HISTORY
Cingular advertised a cell phone for $149.99, a 50 percent reduction in the phone's retail price, if the purchaser enrolled in a Cingular wireless calling plan. Yabsley saw the advertisement and purchased the cell phone with the calling plan. When he received the sales receipt, he noticed that the sales tax was imposed on the regular price of the cell phone, $299.99, rather than the discounted price of $149.99, resulting in the payment of $11.62 more in sales tax than he had anticipated.
Yabsley filed a class action complaint for declaratory relief against the State Board of Equalization (Board), asserting that Regulation 1585, governing taxation of sales of wireless communication devices, was invalid because it conflicted with Revenue and Taxation Code section 6051 imposing a sales tax on gross receipts.
*1161 Yabsley filed a first amended complaint (FAC), naming the Board and Cingular as defendants, but dismissed the Board the same day. The FAC alleges that Cingular's advertising practices were deceptive under sections 17200 and 17500 by failing to apprise prospective customers that sales tax would be charged on the undiscounted price of the cell phone.
Cingular filed a demurrer asserting it has immunity from such a claim under the safe harbor provided by Regulation 1585. This regulation requires that sales tax on a "bundled" cell phone sale, i.e., a cell phone purchased with a call plan, be calculated based on the phone's higher, unbundled price.
Prior to a hearing on Cingular's demurrer, Yabsley sought to file a second amended complaint (SAC). The proposed SAC added a claim that Cingular violated the Consumers Legal Remedies Act (CLRA), Civil Code section 1750 et seq. The trial court denied the motion for leave to file the SAC and, after hearing on the FAC, the court sustained Cingular's demurrer without leave to amend and entered a judgment of dismissal.
After we filed a published opinion affirming the trial court's judgment, we were informed by the California Attorney General that the parties were required to notify it of any lawsuit involving the Unfair Competition Law (UCL) and False Advertising Law (FAL). (§§ 17209, 17536.5; Cal. Rules of Court, rule 8.29.) We granted the Attorney General leave to intervene and ordered a rehearing. We granted requests by Cingular to file a supplemental brief and by the Board to file an amicus curiae brief.
Subsequently, we requested and received supplemental briefing by the parties on the issue of whether Yabsley had standing to bring this action. Prior to oral argument, our colleagues in Division Three of this court decided Loeffler v. Target Corp., supra, 173 Cal.App.4th 1229. We invited supplemental briefing from the parties as to whether Loeffler is applicable.

DISCUSSION

Standard of Review
"When reviewing an order sustaining a demurrer, we review the trial court's ruling de novo, exercising our independent judgment to determine whether the complaint states a cause of action under any legal theory. [Citation.] We accept as true the properly pleaded allegations of facts in the complaint, but not the contentions, deductions or conclusions of fact or law." (Ochs v. PacifiCare of California (2004) 115 Cal.App.4th 782, 788 [9 Cal.Rptr.3d 734].) It is the validity of the trial court's action in sustaining the *1162 demurrer, not its reasons, which is reviewable. (Rodas v. Spiegel (2001) 87 Cal.App.4th 513, 517 [104 Cal.Rptr.2d 439].)

The Revenue and Taxation Code Provides the Exclusive Method for Obtaining Sales Tax Reimbursement
(1) The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." (§ 17200.) California's FAL (§ 17500) "prohibits advertising property or services with untrue or misleading statements or with the intent not to sell at the advertised price." (Quelimane Co. v. Stewart Title Guaranty Co. (1998) 19 Cal.4th 26, 52 [77 Cal.Rptr.2d 709, 960 P.2d 513].) The remedies for violation of the UCL and FAL are equitable in nature, i.e., injunction and restitution. (Buckland v. Threshold Enterprises, Ltd. (2007) 155 Cal.App.4th 798, 812, 819 [66 Cal.Rptr.3d 543].)
The holding in Loeffler precludes Yabsley's claim for a refund or reimbursement of sales tax collected by Cingular. In that case, the plaintiffs filed a complaint seeking reimbursement of sales tax collected by Target on coffee they purchased "to go." They alleged that Target was precluded from collecting sales tax on food items by Revenue and Taxation Code section 6359. Among other remedies, they sought restitution and injunctive relief under the UCL and CLRA. With respect to the UCL, the plaintiffs alleged that Target was engaged in unfair and unlawful business acts or practices by imposing sales tax on the purchase of coffee ("to go" and for "take out"). They sought to enjoin Target from improperly charging sales tax to consumers and restitution of the sales tax paid. With respect to the CLRA, the plaintiffs alleged Target misrepresented that it had the legal right to charge consumers sales tax on coffee purchased to go or for take out. They sought reimbursement from Target for the amount of sales tax wrongfully collected.
The Court of Appeal affirmed the trial court's dismissal of the action after a demurrer was sustained without leave to amend. The court ruled that the action was barred by article XIII, section 32, of the California Constitution and that the administrative remedies in the Revenue and Taxation Code were the exclusive means by which to recover sales taxes wrongfully collected.
(2) Article XIII, section 32 of the California Constitution states: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature." In compliance with this constitutional mandate, the Legislature has adopted a comprehensive system permitting retailers to file administrative *1163 claims with the Board and lawsuits challenging imposition of sales taxes and obtaining sales tax reimbursement. (Rev. & Tax. Code, §§ 6901-6908, 6931-6937.)
The Legislature has provided that filing a claim with the Board is a prerequisite to maintaining a suit for a refund of sales taxes. Revenue and Taxation Code section 6932 states: "No suit or proceeding shall be maintained in any court for the recovery of any amount alleged to have been erroneously or illegally determined or collected unless a claim for refund or credit has been duly filed pursuant to Article 1 (commencing with Section 6901)." "The purpose of requiring a taxpayer to file a claim with the Board before commencing a tax refund lawsuit is to give the Board an opportunity to correct any mistakes." (Loeffler v. Target Corp., supra, 173 Cal.App.4th at p. 1240, citing Preston v. State Bd. of Equalization (2001) 25 Cal.4th 197, 206 [105 Cal.Rptr.2d 407, 19 P.3d 1148].)
(3) The statutory scheme provides a remedy for consumers such as Yabsley. Revenue and Taxation Code section 6901.5 requires a retailer who has collected excess sales tax reimbursement from a customer to return the money to the customer who paid it or remit the funds to the state.[3]
After careful consideration of these statutes and related administrative regulations and cases construing these provisions, as well as the law relating to standing and private rights of action, the Loeffler court concluded that plaintiffs' lawsuit was barred because the regulatory scheme enacted by the Legislature was the sole means by which to obtain reimbursement of wrongfully collected sales tax.
In rejecting the assertion that claims brought pursuant to the UCL and CLRA are not subject to the administrative remedies in the Revenue & Taxation Code, the court noted: "Plaintiffs cannot plead around article XIII, section 32 and Revenue and Taxation Code section 6931 by recasting their causes of action as violations of the UCL and the CLRA. (See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal.4th 163, 182 [83 Cal.Rptr.2d 548, 973 P.2d 527] [`A plaintiff may . . . not "plead around" an "absolute bar to relief" simply "by recasting the cause of *1164 action as one for unfair competition."'].)" (Loeffler v. Target Corp., supra, 173 Cal.App.4th at p. 1248, fn. 11.)
The court reasoned: "[P]laintiffs here seek an injunction, damages and restitution without providing the Board with an opportunity to administratively determine the merits of plaintiffs' interpretation of the sales tax laws. This is not permitted by the sales tax statutes and their underlying policies. Although the Board's interpretation of the tax laws does not bind the courts, the Board has expertise regarding sales tax issues that is entitled to consideration and respect. (Yamaha Corp. of America v. State Bd. of Equalization (1998) 19 Cal.4th 1, 7, 11 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) Further, circumventing the claims process could result in involving the Board, retailers and customers in unnecessary litigation. This undermines the policy underlying section 6932, which is to give the Board an opportunity to correct any mistakes, thereby avoiding the cost of litigation and the consumption of judicial resources. (See Preston [v. State Bd. of Equalization], supra, 25 Cal.4th at p. 206.)" (Loeffler v. Target Corp., supra, 173 Cal.App.4th at p. 1248.)
Yabsley asserts that Loeffler was wrongly decided, as it is contrary to the Supreme Court's opinion in Javor v. State Board of Equalization (1974) 12 Cal.3d 790 [117 Cal.Rptr. 305, 527 P.2d 1153]. We disagree. As noted in Loeffler, the Javor case presented "`unique circumstances.'" (Loeffler v. Target Corp., supra, 173 Cal.App.4th at p. 1245.) One of those circumstances, not present here, was that the customers' entitlement to a tax refund was not in question.
We agree with the Loeffler court's reasoning and its conclusion that the UCL and FAL and the policies they promote cannot take precedence over article XIII, section 32 and the orderly administration of the tax laws require strict adherence to statutory procedures for the administration of the sales tax law.

Yabsley Does Not Meet the Standing Requirements of the UCL and FAL
Yabsley and the Attorney General assert that Loeffler does not preclude an action seeking to enjoin false or deceptive advertising by a retailer. Assuming this argument is correct in the abstract, it does not help Yabsley. The FAC does not seek to enjoin Cingular from engaging in a deceptive advertising practice. The FAC seeks a declaration that Revenue and Taxation Code section 6051 requires a retailer to collect sales tax based on the actual retail price of the product and that Cingular's practice of charging sales tax based on the undiscounted price of the product violates section 6051. The second cause of *1165 action against Cingular based on the UCL and FAL does not ask for injunctive relief, but for "special damages in the sum of $11.62," attorney fees and costs. The only injunctive relief sought is in connection with the declaratory relief cause of action and seeks to enjoin "the Board from engaging in the above-referenced practice."
The proposed SAC requests an injunction against Cingular "prohibiting all unlawful practices of defendant as alleged herein" as well as restitution. Yabsley describes the alleged unlawful practice as the "taxation process" but also alleges that he was induced to purchase the phone because Cingular's advertising failed to advise him that sales tax would be calculated on the undiscounted price of the phone rather than the actual purchase price. Although the proposed SAC seeks an injunction against false or deceptive advertising, it would not survive demurrer because Yabsley fails to satisfy the standing requirements of the consumer remedy laws.[4]
(4) The right to maintain a claim is essential to the existence of a cause of action. (Buckland v. Threshold Enterprises, Ltd., supra, 155 Cal.App.4th at p. 813.) The issue of a plaintiff's standing may be raised at any time during the pendency of an action. (Ibid.) (5) To have standing under the UCL, a person must allege "`". . . injury in fact and has lost money or property as a result of such unfair competition."'" (155 Cal.App.4th at p. 812.)
(6) An "injury in fact" is "`an invasion of a legally protected interest which is . . . concrete and particularized . . . .'" (Buckland v. Threshold Enterprises, Ltd., supra, 155 Cal.App.4th at p. 814.) (7) Yabsley has not alleged the invasion of a legally protected interest. He argues that he has a legally protected interest in receiving truthful advertising under the consumer remedy laws. This is insufficient. The "legally protected interest" for standing purposes must be an interest that is protected by a source other than the remedial provisions of the UCL or FAL. (See, e.g., Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra, 20 Cal.4th at p. 180 ["`section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable"].) The only independent statute Yabsley cites is Revenue and Taxation Code section 6051. That section requires that a retailer pay sales tax based on gross receipts. That statute neither expressly nor impliedly creates in Yabsley any legally cognizable right to avoid paying sales tax on the undiscounted price of the phone. As discussed below, the opposite is true.
*1166 Regulation 1585 expressly authorizes Cingular to collect sales tax based on the undiscounted price of the phone and to collect that amount from the customer.
(8) Yabsley also fails to meet the "lost money or property" requirement. "[T]he UCL's and FAL's `lost money or property' requirement `limit[s] standing to individuals who suffer losses . . . that are eligible for restitution.'" (Kwikset Corp. v. Superior Court (2009) 171 Cal.App.4th 645, 654 [90 Cal.Rptr.3d 123], quoting Buckland v. Threshold Enterprises, Ltd., supra, 155 Cal.App.4th at p. 817.) There has been no determination by the Board that he is eligible for restitution of the alleged excess sales tax he paid at the time he purchased the phone. (Loeffler v. Target Corp., supra, 173 Cal.App.4th at p. 1248.)
(9) Lastly, Yabsley cannot meet the causation requirement. "`[T]here must be a causal connection between the harm suffered and the unlawful business activity. The causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law.'" (Troyk v. Farmers Group, Inc. (2009) 171 Cal.App.4th 1305, 1348-1349 [90 Cal.Rptr.3d 589].) Cingular's alleged nondisclosure of the amount of sales tax to be collected on the purchase did not affect the amount of sales tax due on the sale of the phone because Regulation 1585 permits Cingular to collect sales tax from the consumer based on the nonsale price of the phone.
(10) Even if the Loeffler case and standing requirements were not fatal to Yabsley's complaint, the trial court correctly determined that it has no substantive merit. Although section 17200 broadly prescribes "any unlawful, unfair or fraudulent business act or practice," it does not apply when specific legislation provides a "safe harbor" for the conduct at issue. (Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra, 20 Cal.4th at p. 182.) When specific legislation provides a "safe harbor," a plaintiff may not use the general UCL to assault that harbor. (20 Cal.4th at p. 182.) If the Legislature has permitted certain conduct or considered a situation and concluded that no action should lie, courts may not override that determination. (Ibid.)
Cingular asserts, and the trial court agreed, that Regulation 1585 provides a safe harbor for the conduct Yabsley asserts violates the UCL. Regulation 1585, subdivision (a)(3) states: "Bundled Transaction. The retail sale of a wireless telecommunication device which contractually requires the retailer's customer to activate or contract with a wireless telecommunications service provider for utility service for a period greater than one month as a condition of that sale. A transaction is a bundled transaction within the meaning of this *1167 regulation without regard to the method in which the price is stated to the customer. Also, it is immaterial whether the wireless telecommunication device and utility service are sold for a single price or are separately itemized in the context of a sale or on a sales invoice. A transaction is a bundled transaction if goods and services are sold as a single package, whether wireless telecommunication service is supplied to the customer by the retailer or by an independent service supplier. In such transactions, wireless devices may be sold at a `discounted' price, as an inducement for the customer to enter into an extended service contract. The fact that a wireless telecommunication device, such as a PCS (Personal Communication Service) telephone, may, because of its technological specifications, be subject to activation with only one service supplier, does not alone mean that the sale of the device will be treated as a bundled transaction."
Relying on Krumme v. Mercury Ins. Co. (2004) 123 Cal.App.4th 924 [20 Cal.Rptr.3d 485], Yabsley contends that statutes can provide a safe harbor, but administrative regulations cannot. In Krumme, the appellate court rejected an insurance company's argument that regulations adopted by the Insurance Commissioner provided a safe harbor. Citing Cel-Tech as authority, the Krumme court said in a footnote: "These materials are not germane to our analysis because our Supreme Court has held that only statutes can create a safe harbor." (Id. at p. 940, fn. 5.) Cel-Tech, however, dealt with statutes enacted by the Legislature and the safe harbor they created. There was no reference to regulations. Like the trial court here, we conclude that there is nothing in the Cel-Tech decision purporting to limit the safe harbor doctrine to statutes enacted by the Legislature.[5]
(11) The Legislature has delegated to the Board the job of promulgating regulations relating to the administration and enforcement of the tax statutes. (Rev. & Tax. Code, § 7051; Gov. Code, §§ 11342.1, 11342.2.) The Administrative Procedure Act (APA) subjects proposed agency regulations to certain procedural requirements as a condition to their becoming effective. (Gov. Code, § 11340 et seq.) Pursuant to the APA, "No state agency shall issue, utilize, enforce, or attempt to enforce any guideline, criterion, bulletin, manual, instruction, order, standard of general application, or other rule, which is a regulation as defined in Section 11342.600, unless the guideline, criterion, bulletin, manual, instruction, order, standard of general application, or other rule has been adopted as a regulation and filed with the Secretary of *1168 State . . . ." (Gov. Code, § 11340.5, subd. (a).) If a rule constitutes a regulation within the meaning of the APA (other than an emergency regulation, which may not remain in effect more than 120 days), it may not be adopted, amended or repealed except in conformity with "basic minimum procedural requirements." (Gov. Code, § 11346, subd. (a).)
(12) The status of regulations promulgated by the Board was described by our Supreme Court in Yamaha Corp. of America v. State Bd. of Equalization, supra, 19 Cal.4th at page 7: "[R]egulations adopted by an agency to which the Legislature has confided the power to `make law,' and which, if authorized by the enabling legislation, bind this and other courts as firmly as statutes themselves . . . ." The rule that valid administrative regulations have the force and effect of law has been reiterated in dozens of California cases. (See, e.g., Agricultural Labor Relations Bd. v. Superior Court (1976) 16 Cal.3d 392, 401 [128 Cal.Rptr. 183, 546 P.2d 687]; California Teachers Assn. v. California Com. on Teacher Credentialing (2003) 111 Cal.App.4th 1001, 1008 [4 Cal.Rptr.3d 369].) Many cases also have upheld safe harbors created by administrative regulations. (See, e.g., Dowhal v. SmithKline Beecham Consumer Healthcare (2004) 32 Cal.4th 910, 918 [12 Cal.Rptr.3d 262, 88 P.3d 1] [regulation adopted under Proposition 65 providing safe harbor for consumer product warning labels]; Environmental Law Foundation v. Wykle Research, Inc. (2005) 134 Cal.App.4th 60, 62 [35 Cal.Rptr.3d 788] [same]; In re Vaccine Cases (2005) 134 Cal.App.4th 438, 448 [36 Cal.Rptr.3d 80] [same]; People ex rel. Lungren v. Cotter & Co. (1997) 53 Cal.App.4th 1373, 1377-1378 [62 Cal.Rptr.2d 368] [same]; Ingredient Communication Council, Inc. v. Lungren (1992) 2 Cal.App.4th 1480, 1485-1486 [4 Cal.Rptr.2d 216] [same]; Pulaski v. Occupational Safety & Health Stds. Bd. (1999) 75 Cal.App.4th 1315, 1332-1333 [90 Cal.Rptr.2d 54] [upholding validity of safe harbor regulation regarding standards for employers to reduce repetitive motion injuries]; see also Marshall v. Bankers Life & Casualty Co. (1992) 2 Cal.4th 1045, 1054-1055 [10 Cal.Rptr.2d 72, 832 P.2d 573] [discussing safe harbor provided by ERISA regulation].)
"`. . . Because agencies granted such substantive rulemaking power are truly "making law," their quasi-legislative rules have the dignity of statutes.. . .'" (Bolsa Chica Land Trust v. Superior Court (1999) 71 Cal.App.4th 493, 503-504 [83 Cal.Rptr.2d 850].) Regulation 1585 has the "force and effect" and the "dignity" of a statute. Therefore, it may, and does, provide a safe harbor to Cingular.
Yabsley argues that even if Regulation 1585 provides a safe harbor, it does not immunize Cingular's conduct in failing to disclose to purchasers that sales tax would be charged on the retail price of the phone. Regulation 1585 is silent as to the retailer's duty to disclose the amount of sales tax charged *1169 on a sale and Yabsley cites no statute or other law requiring an advertisement for a wireless communications device, or any other consumer product, to contain information on the sales tax to be applied to the sale.
(13) The duty of a retailer to disclose the sales tax imposed on the sale of tangible personal property is governed by Civil Code section 1656.1.[6] That section creates a rebuttable presumption that a purchaser agrees to pay the sales tax shown on the sales receipt.
The sales invoice Cingular gave to Yabsley stated the amount of the sales tax imposed on the sale. It not only gave Yabsley notice of the amount of sales tax that would be imposed, it constituted a contract of sale between Cingular and Yabsley. As with any other contract, Yabsley had the right to refuse to enter into the contract for the price stated. Because Cingular complied with all applicable regulations, Yabsley's claims under sections 17200 and 17500 fail. (See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra, 20 Cal.4th at p. 182 ["If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination."]; see also South Bay Chevrolet v. General Motors Acceptance Corp. (1999) 72 Cal.App.4th 861 [85 Cal.Rptr.2d 301] [car dealership's contention that automobile financing company's business practice of calculating interest under the 365/360 method was unlawful as contrary to §§ 17200 and 17500 was without merit because California has no law or regulation requiring a lender to use a 365-day year in computing interest or quoting annual interest rates on commercial loans].)
The trial court did not err in sustaining the demurrer without leave to amend. The question before us is one of statutory interpretation, a pure *1170 question of law. (Carmona v. Division of Industrial Safety (1975) 13 Cal.3d 303, 310 [118 Cal.Rptr. 473, 530 P.2d 161].) The FAC and the parties' briefs on demurrer set forth the relevant statutes and regulations and contain the parties' arguments concerning the interpretation of those statutes and regulations. Thus, no purpose would be served by permitting a further amendment.
The judgment of dismissal is affirmed. Respondent shall recover costs.
Yegan, Acting P. J., and Coffee, J., concurred.
NOTES
[1] All statutory references are to the Business and Professions Code unless otherwise stated.
[2] Regulation 1585, subdivision (b) provides: "Application of Tax. [¶] (1) In General. Tax applies to the gross receipts from the retail sale of a wireless telecommunication device. The retailer of the wireless telecommunication device is required to report and pay the tax. [¶] . . . [¶] (3) Bundled Transactions. Tax applies to the gross receipts from the retail sale of a wireless telecommunication device sold in a bundled transaction, measured by the unbundled sales price of that device. Tax applies to the unbundled sales price whether the wireless telecommunication device and utility service are sold for a single price or are separately itemized in the context of a sale or on a sales invoice. The retailer of the wireless telecommunication device is required to report and pay tax measured by the unbundled sales price of the device and may collect tax or tax reimbursement from its customer measured by the unbundled sales price. Tax does not apply to the charges in excess of the unbundled sales price made for telecommunication services."
[3] Revenue and Taxation Code section 6901.5 states: "When an amount represented by a person to a customer as constituting reimbursement for taxes due under this part is computed upon an amount that is not taxable or is in excess of the taxable amount and is actually paid by the customer to the person, the amount so paid shall be returned by the person to the customer upon notification by the Board of Equalization or by the customer that such excess has been ascertained. In the event of his or her failure or refusal to do so, the amount so paid, if knowingly or mistakenly computed by the person upon an amount that is not taxable or is in excess of the taxable amount, shall be remitted by that person to this state."
[4] In the SAC, Yabsley alleges a cause of action under the CLRA. This addition does not save the complaint. The CLRA requires that before an action is filed, the consumer make demand on the retailer to rectify the alleged deceptive practice. (Civ. Code, § 1782.) The SAC does not allege that Yabsley complied with this requirement.
[5] The discussions in Krumme pertaining to the role of regulations in an action under section 17200 are dicta and unnecessary to its conclusion. In any event, our reading of Cel-Tech suggests precisely the opposite conclusion. First, a regulation specifically makes lawful the very conduct that Yabsley contends constitutes an unfair competition and, second, Cel-Tech refers to regulations of a federal regulatory agency (Federal Trade Commission) as an example of a safe harbor. (Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra, 20 Cal.4th at pp. 185-186.)
[6] Civil Code section 1656.1 states:

"(a) Whether a retailer may add sales tax reimbursement to the sales price of the tangible personal property sold at retail to a purchaser depends solely upon the terms of the agreement of sale. It shall be presumed that the parties agreed to the addition of sales tax reimbursement to the sales price of tangible personal property sold at retail to a purchaser if:
"(1) The agreement of sale expressly provides for such addition of sales tax reimbursement;
"(2) Sales tax reimbursement is shown on the sales check or other proof of sale; or
"(3) The retailer posts in his or her premises in a location visible to purchasers, or includes on a price tag or in an advertisement or other printed material directed to purchasers, a notice to the effect that reimbursement for sales tax will be added to the sales price of all items or certain items, whichever is applicable. [¶] . . . [¶]
"[(c)](2) Reimbursement on sales prices in excess of those shown in the schedules may be computed by applying the applicable tax rate to the sales price, rounded off to the nearest cent by eliminating any fraction less than one-half cent and increasing any fraction of one-half cent or over to the next higher cent.
"(3) If sales tax reimbursement is added to the sales price of tangible personal property sold at retail, the retailer shall use a schedule provided by the board, or a schedule approved by the board.
"(d) The presumptions created by this section are rebuttable presumptions."